# EXHIBIT A

Date of Issuance:  July 16, 2018

**PUBLIC UTILITIES COMMISSION OF THE STATE OF CALIFORNIA**

**SAFETY AND ENFORCEMENT DIVISION**                   **Resolution ESRB-8**
**Electric Safety and Reliability Branch**                          **July 12, 2018**

R E S O L U T I O N

**RESOLUTION EXTENDING DE-ENERGIZATION REASONABLENESS, NOTIFICATION, MITIGATION AND REPORTING REQUIREMENTS IN DECISION 12-04-024 TO ALL ELECTRIC INVESTOR OWNED UTILITIES.**

PROPOSED OUTCOME:

   This Resolution extends the de-energization reasonableness, public notification, mitigation and reporting requirements in Decision (D.) 12-04-024 to all electric Investor Owned Utilities (IOUs) and adds new requirements. It also places a requirement on utilities to make all feasible and appropriate attempts to notify customers of a de-energization event prior to performing de-energization.

SAFETY CONSIDERATIONS:

   De-energizing electric facilities during dangerous conditions can save lives and property and can prevent wildfires.  This resolution provides guidelines that IOUs must follow and strengthens public safety requirements when an IOU decides to de-energize its facilities during dangerous conditions.

ESTIMATED COST:  Costs of compliance with the new requirements are unknown.

**SUMMARY**

Commission Decision (D.) 12-04-024 established requirements for reasonableness, notification, mitigation and reporting by San Diego Gas & Electric Company (SDG&E) for its de-energization events.

This resolution extends the requirements established in D.12-04-024 to all electric IOUs, requires that the utilities meet with the local communities that may be impacted by a future de-energization event before putting the practice in effect in a particular area, requires feasible and appropriate customer notifications prior to a de-energization event, and requires notification to the Safety and Enforcement Division (SED) as soon as practicable after a decision to de-energize facilities and within 12 hours after the last service is restored.

218186823                                                1

Resolution ESRB-8                                                   July 12, 2018

## BACKGROUND

California Public Utilities Code (PU Code) Sections 451 and 399.2(a) give electric utilities authority to shut off electric power in order to protect public safety. This authority includes shutting off power for the prevention of fires caused by strong winds.

Application (A.) 08-12-021 filed by SDG&E on December 22, 2008, requested specific authority to shut off power as a fire-prevention measure against severe Santa Ana winds and a review of SDG&E's proactive de-energization measures. SDG&E also requested that such power shut-offs would qualify for an exemption from liability under SDG&E's Tariff Rule 14.

Decision (D.) 12-04-024 issued on April 19, 2012 provided guidance on SDG&E's authority to shut off power under the PU Code and also established factors the Commission may consider in determining whether or not a decision by SDG&E to shut off power was reasonable. The decision ruled that SDG&E has the authority under Public Utilities Code, Sections 451 and 399.2(a) to shut off power in emergency situations when necessary to protect public safety. It also ruled that a decision to shut off power by SDG&E under its statutory authority, including the adequacy of any notice given and any mitigation measures implemented, may be reviewed by the Commission to determine if SDG&E's actions were reasonable.  The decision requires SDG&E to take appropriate and feasible steps to provide notice and mitigation to its customers whenever it shuts off power. The decision also requires SDG&E to notify the Commission's Consumer Protection and Safety Division, now the Safety and Enforcement Division (SED), of the shut-off within 12 hours and submit a report to SED with a detailed explanation of its decision to shut off the power.

Southern California Edison Company (SCE) and Pacific Gas and Electric Company (PG&E) both currently exercise their authority to shut off power during dangerous fire conditions. However, there are currently no established standards on reasonableness, notification, mitigation and reporting by IOUs other than SDG&E.

## DISCUSSION

The 2017 California wildfire season was the most destructive wildfire season on record, and saw multiple wildfires burning across California, including five of the 20 most destructive wildland-urban interface fires in the state's history.  Devastating fires raged in Santa Rosa, Los Angeles, and Ventura, and the Thomas Fire proved to be the largest wildfire in California history.  These fires further demonstrated the fire risk in California.  As a result of the fires and critical fire weather conditions, both the President of the United States and the Governor of California issued State of Emergency declarations.

SDG&E exercised its statutory authority under Public Utilities Code Sections 451 and 399.2(a), to de-energize specific circuits in December of 2017.  The first group of de-energization events occurred during the period of December 4 through 12, 2017.  There were 55 individual circuit de-energization events involving 28 circuits (some circuits had multiple de-energization events) in various eastern San Diego County communities.  A total of approximately 14,000 customers were affected.

A second group of de-energization events occurred on December 14 and 15, 2017. There were six individual circuit de-energization events involving three circuits in various eastern San Diego County communities. A total of approximately 650 customers were affected.

In 2017, SCE also used de-energization as a measure to protect its system against fire safety hazards. The de-energization event occurred on December 7, 2017 and affected customers in the community of Idyllwild. Approximately 8,061 total customers were affected in SCE's and nearby Anza Co-Op's service territories. The de-energization event occurred in response to a Red Flag Warning in effect, SCE meteorological forecasting, field-validated extreme high winds and associated fire risks in the area.

According to SCE, during such an event, the company typically attempts to notify customers who could be affected prior to de-energization if timing allows. For the December 7, 2017 event, SCE notified city, county and government officials prior to de-energizing but was not able to notify affected customers prior to the outage occurring. SCE also utilizes other wildfire mitigation practices, such as blocking of distribution reclosers in High Fire Areas, prior to de-energization. According to SCE, de-energization of circuits would be the last line of defense to protect public safety due to extreme fire weather conditions. SCE requires that such an event must be authorized by its activated Incident Management Team.

PG&E reports that prior to 2018, it did not have a policy to de-energize lines as a fire prevention measure. PG&E reported that it did not proactively de-energize lines due to extreme fire weather conditions in 2017. However, in March 2018 PG&E announced that it is developing a program to de-energize lines during periods of extreme fire conditions and has been meeting with local communities to gather feedback.

## I.      Current De-Energization Policies Applicable to SDG&E

D.12-04-024 established de-energization policies applicable to SDG&E addressing reporting, reasonableness review and customer notification.

### A.  Reporting

Under D.12-04-024, SDG&E is required to provide the following notifications:

- A notification to the Director of SED provided no later than 12 hours after the power shut-off.

- A report to the Director of SED provided no later than 10 business days after the shut-off event ends that includes (i) an explanation of the decision to shut off power; (ii) all factors considered in the decision to shut off power, including wind speed, temperature, humidity, and moisture in the vicinity of the de-energized circuits; (iii) the time, place, and duration of the shut-off event; (iv) the number of affected customers, broken down by residential, medical baseline, commercial/industrial, and other; (v) any wind-related damage to SDG&E's overhead power-line facilities in the areas where power is shut off; (vi) a description of the notice to customers and any other mitigation provided by

3

Resolution ESRB-8                                                       July 12, 2018

SDG&E; and (vii) any other matters that SDG&E believes are relevant to the Commission's assessment of the reasonableness of SDG&E's decision to shut off power.

As other electric IOUs shut off power in a similar manner and in similar situations, such notifications are important to allow safety oversight by SED, and it would be appropriate to have these reporting requirements apply to all electric IOUs' de-energization events.

### B.  Reasonableness Review

D.12-04-024 identified several factors that the Commission may consider in assessing whether an SDG&E decision to de-energize "was reasonable and qualifies for an exemption from liability under SDG&E's Electric Tariff Rule 14."[1]  These factors are summarized below:

- SDG&E has the burden of demonstrating that its decision to shut off power is necessary to protect public safety.

- SDG&E must rely on other measures, to the extent available, as alternatives to shutting off power.

- SDG&E must reasonably believe that there is an imminent and significant risk that strong winds will topple its power lines onto tinder dry vegetation during periods of extreme fire hazard.

- SDG&E must consider efforts to mitigate the adverse impacts on the customers and communities in areas where it shuts off power. This includes steps to warn and protect its customers whenever it shuts off power.

- Other additional factors, as appropriate, to assess whether the decision to shut off power is reasonable.

As other electric IOUs are developing and/or instituting de-energization plans, it is important that these factors be used to assess the reasonableness of all electric IOU de-energization events in order to ensure that the power shut off is executed only as a last resort and for a good reason. However, we modify the third factor listed above by adding the phrase underlined below:

- [The IOU] must reasonably believe that there is an imminent and significant risk that strong winds will topple its power lines onto tinder dry vegetation <u>or will cause major vegetation-related impacts on its facilities</u> during periods of extreme fire hazard.

### C.  Public Outreach, Notification, and Mitigation

D.12-04-024 requires that SDG&E provide notice and mitigation to its customers, to the extent feasible and appropriate, whenever SDG&E shuts off power pursuant to its statutory authority.

---

[1] D.12-04-024, page 30.

4

Resolution ESRB-8                                                        July 12, 2018

As other electric IOUs are developing and/or instituting de-energization plans, it is important that this requirement for public outreach, notification, and mitigation apply to all electric IOUs in order to ensure that customers are impacted to the least extent necessary.  We recognize that it is not practicable to have an absolute requirement that electric IOUs provide advance notification to customers prior to a de-energization event.

**II.      Strengthened Requirements Applicable to all Electric IOUs**

Recent California experience with wildfires demands that we enhance existing de-energization policy and procedures. In order to ensure that the public and local officials are prepared for power shut off and aware of an IOU de-energization policy, and in order to ensure proper safety oversight by SED, we adopt the following:

1.  The guidelines in D.12-04-024, currently applicable to SDG&E only, shall apply to all electric IOUs.

2.  The guidelines shall be strengthened as described in the following sections and the strengthened guidelines shall apply to all electric IOUs.

   **A.  Reporting**

IOUs shall submit a report to the Director of SED within 10 business days after each de-energization event, as well as after high-threat events where the IOU provided notifications to local government, agencies, and customers of possible de-energization though no de-energization occurred. Reports to the Director of SED must include at a minimum the following information:

- The local communities' representatives the IOU contacted prior to de-energization, the date on which they were contacted, and whether the areas affected by the de-energization are classified as Zone 1, Tier 2, or Tier 3 as per the definition in General Order 95, Rule 21.2-D.

- If an IOU is not able to provide customers with notice at least 2 hours prior to the de-energization event, the IOU shall provide an explanation in its report.

- The IOU shall summarize the number and nature of complaints received as the result of the de-energization event and include claims that are filed against the IOU because of de-energization.

- The IOU shall provide detailed description of the steps it took to restore power.

- The IOU shall identify the address of each community assistance location during a de-energization event, describe the location (in a building, a trailer, etc.), describe the assistance available at each location, and give the days and hours that it was open.

   **B.  Reasonableness Review**

The reasonableness review discussion in D.12-04-024 and detailed above shall apply to all electric IOUs.  At this time, we are not adding additional requirements and, while we recognize that this issue along with financial liability are important ongoing discussions, this resolution is not the venue for that discussion.

Resolution ESRB-8                                                    July 12, 2018

### C. **Public Outreach, Notification, and Mitigation**

Increased coordination, communication and public education can be effective measures to increase public safety and minimize adverse impact from de-energization.

- The IOU shall notify the Director of SED, as soon as practicable, once it decides to de-energize its facilities. If the notification was not prior to the de-energization event, the IOU shall explain why a pre-event notification was not possible. The notification shall include the area affected, an estimate of the number of customers affected, and an estimated restoration time. The IOU shall also notify the Director of SED of full restoration within 12 hours from the time the last service is restored.

- Within 90 days of the effective date of this resolution, each IOU shall convene De-Energization Informational Workshops with representatives of entities that may be affected by a de-energization event, including but not limited to: state agencies, tribal governments, local agencies and representatives from local communities. Workshops should be inclusive of, but not limited to, representatives of customers who are low-income, have limited English, have disabilities, or are elderly. The purpose of these workshops is to explain, and receive feedback on, the IOU's de-energization policies and procedures. The workshops should be supplemented by focused working sessions, upon request by specific groups such as communications providers or Community Choice Aggregators that might have notification needs different than those of the general public.

- Within 30 days of the effective date of this resolution, each IOU shall submit a report to the Director of SED outlining its public outreach, notification, and mitigation plan. The plan must include at a minimum, the following information:

  o Names of communities that will be invited to De-Energization Informational Workshops.

  o Names of state agencies and tribal governments that the IOU will coordinate with in developing its de-energization plan and will invite to De-Energization Informational Workshops.

  o Names of local agencies the IOU will coordinate with in developing its de-energization plan and will invite to De-Energization Informational Workshops.

  o Proposed communication methods for publicizing and convening the De-Energization Informational Workshops.

  o Details regarding its plans for notification in advance of, and during, a de-energization event, and its plans for mitigation when de-energization occurs.

- The IOU shall ensure that de-energization policies and procedures are well-communicated and made publicly available, including the following:

  o Make available and post a summary of de-energization policies and procedures on its website.

  o Meet with representatives from local communities that may be affected by

6

de-energization events, before putting the practice in effect in a particular area.

- o Provide its de-energization and restoration policy in full, and in summary form, to the affected community officials before de-energizing its circuits.

- o Discuss the details of any potential shut-off and mitigation measures that the communities should consider putting in place, including information about any assistance that the IOU may be able to provide during events.

- In anticipation of a specific de-energization event, the IOU shall:

- o Notify customers of planned de-energization as soon as practicable before the event.

- o As practicable and operationally feasible, notify and communicate with representatives from the fire departments, first responders, local communities, government, communications providers, and Community Choice Aggregators that may be affected by the de-energization event.

- o Discuss with local government and community representatives the details of any potential shut-off and mitigation measures the IOU can provide to lessen the negative impacts of the power outage (e.g., cooling centers).

- o Ensure that critical facilities such as hospitals, emergency centers, fire departments, and water plants are aware of the planned de-energization event.

- The IOU shall retain documentation of community meetings and information provided in electronic form, and make that information available to SED upon request. The information shall be retained for a minimum of one year after the de-energization event or five years after the community meetings, whichever comes first.

- After the de-energization event, IOUs shall assist critical facility customers to evaluate their needs for backup power and determine whether additional equipment is needed. To address public safety impacts of a de-energization event, the IOU may provide generators to critical facilities that are not well prepared for a power shut off.

- The IOU shall retain records of customer notifications and make that information available to SED upon request. The information shall be retained for a minimum of one year after the de-energization event.

## COMMENTS ON DRAFT RESOLUTION

PU Code Section 311(g)(1) provides that a resolution must be served on all parties and subject to at least 30 days public review and comment prior to a vote of the Commission. Section 311(g)(2) provides that this 30-day period may be reduced or waived upon the stipulation of all parties in the proceeding or in other specified situations.

The draft resolution was mailed to parties for comment on May 30, 2018, and was noticed on the Commission's Daily Calendar on June 8, 2018. The 30-day comment period for the draft resolution was neither waived nor reduced.  Parties submitted comments by June 28, 2018, and reply comments by July 6, 2018.

Based on parties' comments, several modifications were made to the draft resolution, including the following:

- One of the factors specified in D.12-04-024 for consideration during reasonableness reviews was expanded for use when applied to all IOUs.

- The requirements for reporting events that do not eventually trigger de-energization were clarified.

- The full restoration reporting period to the SED was increased from 30 minutes to 12 hours.

- The period for convening De-Energization Informational Workshops was increased from 60 days to 90 days.

- The guidance for meeting with local communities was made a general requirement, rather than tied to specific de-energization events.

- Low-income, limited English, and disability communities were added to the list of parties to include in the De-Energization Informational Workshops.

- Communications providers were added to the list of representatives to be notified in anticipation of a de-energization event.

- The requirement to provide generators and/or batteries to critical facilities was removed since most critical facilities are required to have their own back-up power resources.

Also in response to comments by the parties, we clarify that the requirements adopted in this resolution are not in conflict with IOU authority to de-energize power lines to ensure public safety provided under the PU Code. We expect an IOU to use its best judgment on a case-by-case basis to determine whether de-energization is needed for public safety. We hold this expectation even if an IOU has not complied fully with each of the requirements in this resolution, for example, if a need for de-energization arises before an IOU has meet with the impacted local communities. If an IOU did not fulfill one or more of the requirements in this resolution prior to a de-energization, the IOU shall identify the missed requirement(s) and provide an explanation in its report submitted to the Director of SED after the de-energization event.

## **FINDINGS**

1. Under PU Code Sections 451 and 399.2(a), electric IOUs have the authority to shut off power in order to protect public safety.

2. The decision to de-energize electric facilities for public safety is complex and dependent on many factors including and not limited to fuel moisture; aerial and ground firefighting capabilities; active fires that indicate fire conditions; situational awareness provided by fire agencies, the National Weather Service and the United States Forest Service; and local meteorological conditions of humidity and winds.

3. The decision to shut off power may be reviewed by the Commission pursuant to its broad jurisdiction over public safety and utility operations.

Resolution ESRB-8                                                    July 12, 2018

4.  The requirements for reporting, public outreach, notification, mitigation and reasonableness review in D.12-04-024 are effective, but are only applicable to SDG&E.

5.  All electric IOUs may face similar safety situations requiring power shut-off in emergencies and de-energization events in their service territory.

6.  De-energization of electric facilities could save lives, protect property, and prevent fires.

7.  The measures in D.12-04-024 should be strengthened to further ensure that the public and local officials are prepared for de-energization events and to ensure the proper safety oversight by the Commission's Safety and Enforcement Division.

**THEREFORE, IT IS ORDERED THAT:**

1.  All electric IOUs shall take appropriate and feasible steps to provide notice and mitigation to their customers in accordance with the guidelines in D.12-04-024 whenever they shut off power pursuant to their statutory authority.

2.  All electric IOUs shall follow the notification requirements to SED established in D.12-04-024.

3.  All electric IOUs shall comply with the additional guidelines stated in the section of this resolution titled "**Strengthened Requirements Applicable to all Electric IOUs.**"

This Resolution is effective today.

I certify that the foregoing resolution was duly introduced, passed and adopted at a conference of the Public Utilities Commission of the State of California held on July 12, 2018; the following Commissioners voting favorably thereon:

/s/ *ALICE STEBBINS*
ALICE STEBBINS
Executive Director

MICHAEL PICKER
                President
CARLA J. PETERMAN
LIANE M. RANDOLPH
MARTHA GUZMAN ACEVES
CLIFFORD RECHTSCHAFFEN
                Commissioners

9