McDERMOTT WILL & EMERY LLP
STEVEN S. SCHOLES (admitted *pro hac vice*)
444 West Lake Street, Suite 4000
Chicago, IL  60606-0029
Telephone:       +1 312 372 2000
Facsimile:       +1 312 984 7700

MICHAEL A. PIAZZA (State Bar No. 235881)
GREGORY R. JONES (State Bar No. 229858)
JASON D. STRABO (State Bar No. 246426)
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:       +1 310 277 4110
Facsimile:       +1 310 277 4730
Email:           PG&E@mwe.com

Attorneys for Individual Defendants
WILLIAM JOHNSON, GEISHA WILLIAMS,
and SUMEET SINGH

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CHRISTOPHER VATAJ, | CASE NO. 4:19-cv-06996-HSG |
| Plaintiff, | **REPLY BRIEF IN SUPPORT OF THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| WILLIAM D. JOHNSON, JOHN R. SIMON, GEISHA WILLIAMS, and JASON P. WELLS, | Hearing: |
| Defendants. | Date:      August 20, 2020<br>Time:      2:00 p.m.<br>Location:  Courtroom 2 (4th Floor) |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................................1

II.    THE AC IS AN IMPERMISSIBLE PUZZLE PLEADING....................................1

III.   PLAINTIFFS' RULE 10B-5(A) AND (C) CLAIM MUST BE DISMISSED.........3

IV.    PLAINTIFFS' RULE 10B-5(B) CLAIM MUST BE DISMISSED .........................3

       A.    Plaintiffs Have Not Pled With Particularity That Any
             Individual Defendant Made An Actionable Statement ..................................3

             1.    None Of The Six Statements By Johnson And Singh
                   Is Actionable ....................................................................................4

             2.    Plaintiffs Have Not Sufficiently Alleged That The
                   Individual Defendants Had Ultimate Authority Over
                   Any Written Statements ....................................................................5

       B.    Plaintiffs Have Failed To Allege The "In Connection With"
             Element .......................................................................................................6

       C.    Plaintiffs Have Failed To Allege Scienter .....................................................7

             1.    Plaintiffs Mischaracterize The Scienter Pleading
                   Standard ............................................................................................7

             2.    The Individual Defendants Are Not Required To
                   Propose Nonculpable Inferences To Defeat Scienter
                   At The Pleadings Stage .....................................................................8

             3.    Scienter Cannot Be Inferred Through The Core
                   Operations Doctrine ..........................................................................9

             4.    Plaintiffs Have Not Alleged Scienter Based On
                   Public Statements Made By The Governor & CPUC .....................10

             5.    Plaintiffs Have Not Pled Any Motive That Would
                   Support Scienter...............................................................................11

       D.    Plaintiffs Have Failed To Allege Loss Causation .......................................12

V.     PLAINTIFFS' SECTION 20(A) CLAIM ALSO MUST BE DISMISSED...........15

VI.    CONCLUSION....................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Aqua Metals, Inc. Sec. Litig.*, No. 17-cv-07142-HSG,
2019 WL 3817849 (N.D. Cal. Aug. 14, 2019)......................................................1, 2, 15

*Bielousov v. GoPro, Inc.*, No. 16-CV-06654-CW,
2017 WL 3168522 (N.D. Cal. July 26, 2017)..................................................................4

*Bonanno v. Cellular Biomedicine Grp., Inc.*, No. 15-cv-01795-WHO,
2016 WL 4585753 (N.D. Cal. Sep. 2, 2016) .................................................................14

*Chassin Holdings Corp. v. Formula VC Ltd.*, No. 15-cv-02294-EMC,
2017 WL 66873 (N.D. Cal. Jan. 6, 2017).......................................................................8

*Desta v. Wins Fin. Holdings*, No. 2:17-cv-02983-CAS-AGR,
2018 WL 7458639 (C.D. Cal. Nov. 9, 2018)...................................................................8

*Fleming v. Impax Labs., Inc.*, No. 16-cv-06557-HSG,
2018 WL 4616291 (N.D. Cal. Sept. 7, 2018) .......................................................12, 13, 14

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008)................................................................................12, 14

*Glazer Capital Mgmt., LP v. Magistri*,
549 F.3d 736 (9th Cir. 2008)........................................................................................8

*Guangyi Xu v. ChinaCache Int'l Holdings, Ltd.*, No. CV15-07952-CAS,
2017 WL 114401 (C.D. Cal. Jan. 9, 2017) ....................................................................8

*Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST,
2018 WL 1070116 (N.D. Cal. Feb. 27, 2018) ...............................................................5

*In re Illumina, Inc. Sec. Litig.*, No. 3:16-CV-3044-L-KSC,
2018 WL 500990 (S.D. Cal. Jan. 22, 2018)....................................................................6

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
564 F.3d 242 (3d Cir. 2009)..........................................................................................9

*In re Intuitive Surgical Sec. Litig.*,
65 F. Supp. 3d 821 (N.D. Cal. 2014) ............................................................................1

*Ire BofI Holding, Inc. Sec. Litig.*, No. 315CV02324GPCKSC,
2017 WL 2257980 (S.D. Cal. May 23, 2017).................................................................15

*Iron Workers Local 580 Joint Funds v. Nvidia Corp.*, No. 18-cv-07669-
HSG, 2020 WL 1244936 (N.D. Cal. Mar. 16, 2020)......................................................9

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, No. 17-cv-05558-
    HSG, 2018 WL 4181954 (N.D. Cal. Aug. 31, 2018).........................................2, 12, 13

*Janus Capital Grp. v. First Deriv. Traders*,
    564 U.S. 135 (2011).........................................................................................5, 6

*KB Partners I, L.P. v. Barbier*,
    907 F. Supp. 2d 826 (W.D. Tex. 2012)..........................................................10

*Khoja v. Orexigen Therapeutics, Inc.*, No. 15-CV-540 JLS (JLB),
    2019 WL 4599882 (S.D. Cal. Sept. 23, 2019) ................................................6

*Kui Zhu v. Taronis Techs. Inc.*, No. CV-19-04529-PHX-GMS,
    2020 WL 1703680 (D. Ariz. Apr. 8, 2020)......................................................5

*In re Leapfrog Enter. Sec. Litig.*,
    237 F. Supp. 3d 943 (N.D. Cal. 2017) ............................................................8

*Loos v. Immersion Corp.*,
    762 F.3d 880 (9th Cir. 2014)....................................................................12, 13

*Lu v. Align Tech., Inc.*,
    417 F. Supp. 3d 1266 (N.D. Cal. 2019) ..........................................................2

*In re MannKind Sec. Actions*,
    835 F. Supp. 2d 797 (C.D. Cal. 2011) ...........................................................11

*Matrixx Initiatives, Inc. v. Siracusano*,
    563 U.S. 27 (2011) ...........................................................................................8

*Mineworkers' Pension Scheme v. First Solar Inc.*,
    881 F.3d 750 (9th Cir. 2018)..........................................................................12

*N.Y. Hotel Trades Council & Hotel Ass'n of N.Y.C., Inc. Pension Fund v.
    Impax Labs. Inc.*, No. 16-cv-06557-HSG,
    2019 WL 3779262 (N.D. Cal. Aug. 12, 2019)..................................12, 13, 14

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014).....................................................................9, 10

*PQ Labs, Inc. v. Yang Qi*, No. C 12-0450 CW,
    2012 WL 2061527 (N.D. Cal. June 7, 2012) ...................................................3

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014)..........................................................................11

*In re Rigel Pharm., Inc. Sec. Litig.*,
    697 F.3d 869 (9th Cir. 2012)....................................................................11, 12

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

DM_US 170174653-2.088584.0015                     - iii -                REPLY IN SUPPORT OF MOTION TO
                                                                        DISMISS (4:19-CV-06996-HSG)

*San Leandro Emergency Med. Group Profit Sharing Plan v. Philp Morris*,
    75 F.3d 801 (2d Cir. 1996)...............................................................................................4

*Schueneman v. Arena Pharm., Inc.*,
    840 F.3d 698 (9th Cir. 2016)..........................................................................................11

*SEC v. Rana Research*,
    8 F.3d 1358 (9th Cir. 1993)..............................................................................................6

*SEC v. Texas Gulf Sulphur Co.*,
    401 F.2d 833 (2d Cir. 1968)..........................................................................................6, 7

*Sheski v. Shopify (USA) Inc.*, 19-cv-06858-HSG,
    2020 WL 2474421 (N.D. Cal. May 13, 2020) ...............................................................11

*Simmons Investments, Inc. v. Conversational Computing Corp.*,
    No. 09-CV-2345-EFM/KMH,
    2011 WL 673759 (D. Kan. Feb. 17, 2011) ....................................................................10

*In re Sinclair Broad. Grp., Inc. Sec. Litig.*, No. CV CCB-18-2445,
    2020 WL 571724 (D. Md. Feb. 4, 2020) .........................................................................7

*In re Solarcity Corp. Sec. Litig.*,
    274 F. Supp. 3d 972 (N.D. Cal. Aug. 11, 2017) ......................................................3, 4, 5

*South Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008).........................................................................................7, 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .....................................................................................................7, 8

*United States SEC v. Pirate Inv'r LLC*,
    580 F.3d 233 (4th Cir. 2009)............................................................................................7

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012)..........................................................................................11

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
    No. CIV.A. 13-6731, 2015 WL 3755218 (E.D. Pa. June 16, 2015) .............................10

*Webb v. SolarCity Corp.*,
    884 F.3d 844 (9th Cir. 2018).........................................................................................8, 9

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
    282 F. Supp. 3d 1074 (N.D. Cal. 2017) ...........................................................................4

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)..........................................................................................11

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

**Statutes**

15 U.S.C. § 78u-4(b)(2)(A)............................................................................................8

**Other Authorities**

17 C.F.R. § 240.10b-5...................................................................................................6

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## I.    INTRODUCTION

In their opening brief, the Individual Defendants established that:  (1) the Amended Complaint ("AC") is a prohibited "puzzle pleading"; (2) plaintiffs failed to allege scheme liability under Rule 10b-5(a) or (c); (3) plaintiffs failed to allege several essential elements of a Rule 10b-5(b) claim; and (4) plaintiffs failed to allege control person liability under Section 20(a).  In response, plaintiffs have conceded their scheme liability claim and failed to rebut the challenges to their Rule 10b-5(b) claim.  Thus, the AC should be dismissed.

## II.    THE AC IS AN IMPERMISSIBLE PUZZLE PLEADING

Plaintiffs do not dispute that the AC groups scores of alleged misstatements followed by scores of undifferentiated allegations purporting to show that each group of statements, *as a whole*, is misleading.  ECF No. 65, p. 15.  Plaintiffs fail to allege the specific facts that render each statement misleading, forcing the Individual Defendants to rummage through a 351-paragraph and 85-page complaint to "sort out the alleged statements and match them with the corresponding adverse facts in order to solve the puzzle of interpreting [plaintiffs'] claims."  *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 831 (N.D. Cal. 2014).  Such puzzle pleading violates Rules 8 and 9(b).

Paragraph 83 is but one example of plaintiffs' puzzle pleading approach.  Plaintiffs allege that the Individual Defendants misrepresented that "PG&E performed extensive benchmarking with SDG&E … in a variety of areas …."  AC ¶ 83 (emphasis removed).  However, plaintiffs never allege in the falsity allegations that ostensibly apply to this statement that PG&E actually had not done any benchmarking with SDG&E when the statement was made.  *Id*. ¶¶ 87, 167-194.  Indeed, no such allegation appears anywhere in the AC.  Courts prohibit puzzle pleading to prevent this very result, *i.e.*, forcing defendants to search through a haphazardly pled complaint for allegations that might support a plaintiff's claims.  Tellingly, plaintiffs offer no response to this example in their opposition.

Plaintiffs attempt to distinguish the AC from the puzzle pleading dismissed in *In re Aqua Metals, Inc. Sec. Litig.*, No. 17-cv-07142-HSG, 2019 WL 3817849 (N.D. Cal. Aug. 14, 2019).  ECF No. 65, p. 16, fn. 3.  This effort backfires.  Like the AC, the *Aqua Metals*

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

complaint alleged scores of misstatements grouped into general subject matter categories, followed by "broad, general explanations that largely fail to identify the specific statements to which they apply." *Id*. at \*7. The Court held that the complaint was a puzzle pleading because it "asks the Court to match hundreds of individual statements with corresponding allegations of falsity presented in a web of inter-referenced paragraphs strewn throughout the complaint." *Id*. at \*8. This is precisely what the AC does.

Plaintiffs argue that *Aqua Metals* was an "omissions" case where the plaintiff failed to "explain why the failure to disclose the problems made the statements misleading." ECF No. 65, p. 16, fn. 3. This argument fails. First, the puzzle pleading bar applies to complaints alleging both affirmative misrepresentations and omissions. *See Irving Firemen's Relief & Ret. Fund v. Uber Techs.*, No. 17-cv-05558-HSG, 2018 WL 4181954, at \*6 (N.D. Cal. Aug. 31, 2018) (applying bar to omission theory); *Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1274-75 (N.D. Cal. 2019) (applying bar to misrepresentation theory). Second, *Aqua Metals* was predominantly an affirmative misrepresentation case, not an omissions case.[1]

Finally, plaintiffs contend that the AC is not a puzzle pleading because it identifies which portions of each statement are allegedly misleading. ECF No. 65, p. 15-16. Attempting to defend their inconsistent use of emphasis to identify the allegedly misleading portions of statements, plaintiffs claim that the un-emphasized quotes are false in their entirety. *Id*. at 15. But this claim only highlights the problem. For example, plaintiffs quote the following passage from PG&E's December 2018 press release without emphasis:

> <u>Detailed and Enhanced Inspections of Electric Infrastructure</u>: Conducting detailed safety inspections of more than 5,500 miles of transmission lines (consisting of approximately 50,000 transmission poles and towers in high fire-threat areas), in addition to routine inspections and maintenance.

---

[1] In *Aqua Metals*, the plaintiff sporadically pled that the defendants "omitted" material facts. *See* ECF No. 66-2, p. 115, 117, 130, 133. In dismissing the complaint, the Court cautioned that any amended complaint must both: (1) "identify and specify" whether each statement is misleading because it misrepresented facts or omitted facts; and (2) for any omission, "clearly specify what the omission is and why the omission is material … on a statement-by-statement basis." 2019 WL 3817849, at \*8. Plaintiffs have followed neither directive in the AC, despite also sporadically alleging that the Individual Defendants "omitted" material facts or made "omissions." AC ¶¶ 22, 331(b), 334, 339, 343, 345, 351.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

> PG&E has already inspected approximately 350 miles of transmission lines in the past several weeks. This includes ground and climbing inspections, as well as aerial imagery captured by drones and in some cases, helicopter, to further complement and enhance visual inspections. If any issues are identified as a potential risk to public safety, PG&E will take action to address them right away. PG&E also plans to begin similar inspections of its distribution lines in high fire-threat areas in early 2019.

AC ¶ 136. According to plaintiffs, this entire paragraph is false or misleading. However, the corresponding falsity allegations do not contain any facts showing that any of the specific statements contained in this paragraph were false when made. *Id.* ¶¶ 136-137, 142, 256-272. This same issue plagues other block quotes pled in the AC. *Id.* ¶¶ 111, 113, 130, 133, 134, 138, 139, 140. By requiring the Individual Defendants to hunt down falsity allegations across hundreds of paragraphs, plaintiffs have violated Rules 8 and 9(b).

## III.   PLAINTIFFS' RULE 10B-5(A) AND (C) CLAIM MUST BE DISMISSED

Plaintiffs do not even attempt to defend their "scheme liability" allegations under Rule 10b-5(a) and (c). AC ¶ 339. Thus, they concede that this claim must be dismissed. *See In re Solarcity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 991 (N.D. Cal. Aug. 11, 2017) (failure to respond to motion to dismiss challenge requires dismissal).

## IV.   PLAINTIFFS' RULE 10B-5(B) CLAIM MUST BE DISMISSED

### A.   <u>Plaintiffs Have Not Pled With Particularity That Any Individual Defendant Made An Actionable Statement</u>

Plaintiffs agree that the Individual Defendants are only alleged to have personally made six of the 41 alleged misstatements and that Geisha Williams did not make any personally. ECF No. 65, p. 16-21. However, they incorrectly contend that certain of the six (oral) statements made by William Johnson and Sumeet Singh are actionable and that the Individual Defendants had "ultimate authority" over the 35 written statements.[2]

---

[2] Plaintiffs repeatedly assert that the Individual Defendants "admit" or "concede" that certain alleged misstatements were false or were "made" by defendant PG&E Corporation because they did not move to dismiss on those grounds. ECF No. 65, p. 11, 17, fn. 4, & p. 21, fn. 8. This assertion is nonsensical. The Individual Defendants have moved to dismiss the entire AC as an impermissible puzzle pleading, meaning that falsity has not been pled for any of the 41 alleged misstatements. Plaintiffs' baseless argument is also a transparent effort to saddle PG&E with admissions before it has even been served, much less appeared, in this action. The Individual Defendants are not required to admit, deny, or respond to each allegation on behalf of themselves or other defendants in a Rule 12(b)(6) motion.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

### 1.    None Of The Six Statements By Johnson And Singh Is Actionable

The six oral statements made by Johnson and Singh are not actionable because each is too generalized and vague or reflects mere corporate optimism.  ECF No. 60, p. 19-23.  Plaintiffs' opposition addresses only three of the challenged statements.  ECF No. 65, p. 19-20.  Thus, they concede that the remaining statements are not actionable.  *See Solarcity*, 274 F. Supp. 3d at 991 (failure to argue that certain alleged misstatements were actionable was sufficient grounds to dismiss those allegations with prejudice).

Plaintiffs argue (but do not allege) that their own interpretation is that when Johnson said "we will do better this year," he "plainly meant" the Utility "would restore power after de-energization in fewer than four days."  ECF No., 65, p. 19.  They also interpret (but do not allege) that when he said there is "still a little coordination to go" with governments, what he actually meant was that by September 2019, they would "know whether [and] where PG&E would site shelters" during de-energizations.  *Id*.  Similarly, plaintiffs argue (but do not allege) that when Singh said the Utility was "reaching out" to local governments regarding de-energizations, they interpret that to mean that the Utility was "working with" them. *Id*. at 20.  Plaintiffs misconstrue these statements to support their claims, and in doing so, confirm the statements are inactionable.  *See GIA-GMI, LLC v. Michener*, No. C-06-7949 SBA, 2007 WL 2070280, at *9 (N.D. Cal. July 16, 2007) ("Plaintiff cannot sidestep the heightened pleading requirements for fraud by simply mischaracterizing" statements).

Neither case cited by plaintiffs helps them because both involved statements that were capable of objective verification.  *See Bielousov v. GoPro, Inc*., No. 16-CV-06654-CW, 2017 WL 3168522, at *6 (N.D. Cal. July 26, 2017) (rejecting puffery challenge to statement that drone "was capable of flight time of eighteen minutes and could capture 'amazingly smooth' aerial footage"); *In re Wells Fargo & Co. S'holder Derivative Litig*., 282 F. Supp. 3d 1074, 1096 (N.D. Cal. 2017) (rejecting puffery challenge to statement that "cross-selling results in a 'better deal and greater value' of customers" and that "the goal of 8 products per customer was attainable").  Here, in contrast, none of the challenged oral statements is objectively verifiable.  *See, e.g*., *San Leandro Emergency Med. Group Profit*

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

REPLY IN SUPPORT OF MOTION TO DISMISS (4:19-CV-06996-HSG)

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*Sharing Plan v. Philp Morris Co.*, 75 F.3d 801, 811 (2d Cir. 1996) (rejecting statement that defendant "expect[s] to do better this year than last year").

> 2.    Plaintiffs Have Not Sufficiently Alleged That The Individual Defendants Had Ultimate Authority Over Any Written Statements

Plaintiffs admit that the Individual Defendants did not personally make any of the alleged written statements and that their liability is based on having ultimate authority over them. ECF No. 65, p. 16-18. The parties agree that under *Janus Capital Grp. v. First Deriv. Traders*, 564 U.S. 135, 142-43 (2011), the "maker" of a statement under Rule 10b-5(b) includes any person with "ultimate authority" over the statement, which means the ability to control its content and dissemination. Plaintiffs' ultimate authority allegations fail.

First, plaintiffs do not contend that Johnson had ultimate authority for any of the allegedly false written statements. *See* ECF No. 65, p. 16-18. Thus, plaintiffs have abandoned any claim that Johnson is liable for making those statements under Rule 10b-5(b). *See Solarcity*, 274 F. Supp. 3d at 991.

Second, plaintiffs claim that Williams is only liable for the alleged misstatements contained in the December 2018 press release. ECF No. 65, p. 17. Plaintiffs argue that Williams had ultimate authority over the press release because she was one of PG&E's "highest-ranking officers" and was quoted as making other non-misleading statements in the same document. *Id.* Neither asserted basis satisfies *Janus*.

To plead ultimate authority liability under Rule 10b-5(b), a plaintiff must allege "specific facts" demonstrating that the officer had the ability to control each statement's content and dissemination. *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 1070116, at *9 (N.D. Cal. Feb. 27, 2018). Here, plaintiffs have only pled that Williams was the CEO when the press release was issued. AC ¶ 24. They allege no specific facts showing that she had the ability to control the content and dissemination of the press release or even the conclusion that she had "ultimate authority" over the document.[3]

---

[3] None of the three cases cited by plaintiffs (*see* ECF No. 65, p. 17) addresses the issue of ultimate authority. *See Kui Zhu v. Taronis Techs. Inc.*, No. CV-19-04529-PHX-GMS, 2020 WL 1703680, at *3-7 (D. Ariz. Apr. 8, 2020) (no argument or analysis regarding whether

Moreover, the mere fact that Williams was quoted in a press release issued by a company the size of PG&E does not render her the "maker" of the alleged misstatements in the release, especially when her quoted statements are not alleged to be misleading. Plaintiffs cite no case holding that an officer has ultimate authority for a press release merely because she was quoted in it. Indeed, in the lone case cited by plaintiffs, the complaint alleged that the CEO micro-managed the company, which bolstered the plausibility of an inference that he reviewed and approved the press release in which he was quoted. ECF No. 65, p. 17 (citing *Bruce v. Suntech Power Holdings Co.*, 64 F. Supp. 3d 1365, 1377 (N.D. Cal. 2014)). The AC contains no such allegations regarding Williams.

Third, plaintiffs claim that Singh is liable for statements made in the Utility's wildfire mitigation plan and "CPUC filing" because he is "PG&E's Head of Wildfire Risk Management efforts – the division in charge of creating both filings," identified in the wildfire mitigation plan, and presented it at the February 2019 workshop. ECF No. 65, p. 17-18. However, plaintiffs do not allege who created those documents, what the "CPUC filing" is, what involvement Singh had in their preparation, or whether he had the ability to control their content and dissemination. *See* AC ¶¶ 8, 25, 76.

**B.    Plaintiffs Have Failed To Allege The "In Connection With" Element**

Plaintiffs do not dispute that they must allege each misstatement was made "in connection with the purchase or sale of any security" (17 C.F.R. § 240.10b-5). ECF No. 65, p. 21-22. While courts have broadly construed this language, the element must be alleged adequately, and the broad construction has limits. Under the *Texas Gulf* standard adopted by the Ninth Circuit (*SEC v. Rana Research*, 8 F.3d 1358, 1362 (9th Cir. 1993)), the "in connection with" element requires allegations that the untrue statement was publicly disseminated and that there was some reasonable basis for the speaker to believe that it might influence investors. *See SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 862 (2d Cir.

---

officer defendants had "ultimate authority" to "make" statements in press release under *Janus*); *Khoja v. Orexigen Therapeutics, Inc.*, No. 15-CV-540 JLS (JLB), 2019 WL 4599882, at *13-21 (S.D. Cal. Sept. 23, 2019) (same); *In re Illumina, Inc. Sec. Litig.*, No. 3:16-CV-3044-L-KSC, 2018 WL 500990, at *3-6 (S.D. Cal. Jan. 22, 2018) (same).

DM_US 170174653-2.088584.0015                - 6 -                REPLY IN SUPPORT OF MOTION TO DISMISS (4:19-CV-06996-HSG)

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

1968); *United States SEC v. Pirate Inv'r LLC*, 580 F.3d 233, 250-51 (4th Cir. 2009). Plaintiffs have failed to allege that each of the misstatements was publicly disseminated and that the speakers had a reasonable basis to believe that they might influence investors.

In their opposition, plaintiffs cite several cases demonstrating a variety of contexts in which courts have found that a statement can satisfy the "in connection with" element. ECF No. 65, p. 21-22 (citing cases).[4]  Plaintiffs miss the point.  While the "in connection with" element may be alleged adequately with respect to statements made in a variety of contexts, plaintiffs have not alleged this essential element in the specific context of the statements at issue in this case.

### C.    <u>Plaintiffs Have Failed To Allege Scienter</u>

Plaintiffs attempt to defend their scienter allegations by arguing that the Individual Defendants:  (i) have invoked the wrong pleading standard; (ii) have not proposed "innocent inferences"; (iii) acted with scienter inferentially through the "core operations" doctrine; (iv) were told that their statements were false; and (v) had a general motive to lie.  ECF No. 65, p. 23-28.  None of these arguments has merit.

### 1.    Plaintiffs Mischaracterize The Scienter Pleading Standard

Plaintiffs argue that the Individual Defendants invoked the wrong pleading standard because in *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776 (9th Cir. 2008), the Ninth Circuit "overruled [the] specific holding" in *Silicon Graphics, Inc.*, 183 F.3d 970 (9th Cir. 1999), that scienter must be pled "in great detail."  ECF No. 65, p. 23.  This argument mischaracterizes the law.

In *South Ferry*, the Ninth Circuit clarified that the approach to evaluating scienter articulated in *Silicon Graphics* was "too demanding and focused too narrowly in dismissing vague, ambiguous, or general allegations outright."  542 F.3d at 783-84.  The reason for this clarification was the Supreme Court's opinion in *Tellabs, Inc. v. Makor Issues & Rights,*

---

[4] One of the cases cited by plaintiffs recognizes that the *Texas Gulf* standard requires the plaintiff to allege that the statement was publicly disseminated.  *See In re Sinclair Broad. Grp., Inc. Sec. Litig.*, No. CV CCB-18-2445, 2020 WL 571724, at *5 (D. Md. Feb. 4, 2020).

REPLY IN SUPPORT OF MOTION TO DISMISS (4:19-CV-06996-HSG)

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

*Ltd.*, 551 U.S. 308 (2007), holding that courts must evaluate scienter allegations both individually and holistically. *Id.* at 326. But the Ninth Circuit did not hold in *South Ferry* that scienter does not need to be pled "in great detail." Indeed, subsequent to that decision, the Ninth Circuit held in *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, (9th Cir. 2008), quoting *Silicon Graphics*, that "to succeed on its claim, [the plaintiff] must 'plead, in great detail, facts that constitute strong circumstantial evidence of [scienter]." *Id.* at 745.

This is still the applicable scienter pleading standard, as numerous district courts have applied it subsequent to *South Ferry*. *See, e.g.*, *Desta v. Wins Fin. Holdings*, No. 2:17-cv-02983-CAS-AGR, 2018 WL 7458639, at *5 (C.D. Cal. Nov. 9, 2018) (quoting "in great detail" language from *Silicon Graphics*); *In re Leapfrog Enter. Sec. Litig.*, 237 F. Supp. 3d 943, 950 (N.D. Cal. 2017) (same); *Guangyi Xu v. ChinaCache Int'l Holdings, Ltd.*, No. CV15-07952-CAS (RAOx), 2017 WL 114401, at *4 (C.D. Cal. Jan. 9, 2017) (same); *Chassin Holdings Corp. v. Formula VC Ltd.*, No. 15-cv-02294-EMC, 2017 WL 66873, at *6 (N.D. Cal. Jan. 6, 2017) (same).

2. The Individual Defendants Are Not Required To Propose Nonculpable Inferences To Defeat Scienter At The Pleadings Stage

Plaintiffs next argue that the Court should draw all culpable inferences in favor of upholding the sufficiency of their scienter allegations because the Individual Defendants "never identify a competing nonculpable inference." ECF No. 65, p. 23. However, a defendant is not required to propose a nonculpable inference to defeat scienter.

A plaintiff must allege particular facts to support an inference that each defendant acted with the requisite level of scienter. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 48 (2011). The PSLRA requires the inference to be "strong" (15 U.S.C. § 78u-4(b)(2)(A)), meaning that "a reasonable person would deem the inference cogent and at least as compelling as any opposing inference of non-fraudulent intent." *Id.* at 48 (quoting *Tellabs*, 551 U.S. at 324). But this comparative inquiry does not require a defendant to offer a nonculpable inference. Indeed, numerous courts have rejected scienter allegations without such a countervailing suggestion. *See, e.g.*, *Webb v. SolarCity Corp.*, 884 F.3d 844, 855

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

(9th Cir. 2018) (holding that "[t]he district court was correct that each of [plaintiff's] allegations, considered alone, would be insufficient to establish scienter").

Even so, the obvious nonculpable inference is that following devastating wildfires in 2017 and 2018, the Utility was facing the monumental and unprecedented task of implementing state-mandated de-energizations on a widespread scale to prevent further catastrophic wildfires. The AC describes the Utility's many efforts to prepare for this task and that the Utility (including the Individual Defendants) was in near-constant communication with its regulators and other constituents in the lead-up to the first de-energizations in 2019. The fact that the Utility encountered problems in executing those de-energizations reflects the difficulty of the task presented, not an intent to deceive investors in pre-execution statements concerning its de-energization preparations.

3.      Scienter Cannot Be Inferred Through The Core Operations Doctrine

Plaintiffs rely heavily on the core operations doctrine to establish scienter. ECF No. 65, p. 23-26. This effort fails. In the Ninth Circuit, except in very limited circumstances, a plaintiff cannot allege a strong inference of scienter merely by pointing to an officer's corporate role. *Webb*, 884 F.3d at 854. One narrow exception permits courts to infer that an officer has knowledge of facts critical to a company's "core operations," but only where the plaintiff alleges that the officer either had "actual access to the disputed information" or "the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Id*. (quoting *South Ferry*, 542 F.3d at 785-86). Succeeding on a core operations theory "is not easy" and requires either: (1) "specific admissions by one or more corporate executives of detailed involvement in the minutia of a company's operations"; or (2) "witness accounts demonstrating that executives had actual involvement in creating false reports." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014); *Iron Workers Local 580 Joint Funds v. Nvidia Corp.*, No. 18-cv-07669-HSG, 2020 WL 1244936, at *11 (N.D. Cal. Mar. 16, 2020) (quoting same, describing burden as "heavy," and rejecting core operations allegations).

Unsurprisingly, plaintiffs ignore the Ninth Circuit standard, relying instead on the Third Circuit's decision in *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242 (3d Cir. 2009), and arguing that the doctrine applies whenever an officer makes "detailed, confident statements" about "important topics" to the company. ECF No. 65, p. 23-26. This is not the standard in the Ninth Circuit, and plaintiffs' invocation of an inapplicable standard avails them nothing.[5]

The AC categorically fails to satisfy the Ninth Circuit standard. First, plaintiffs have not alleged that any of the Individual Defendants made "specific admissions" about having "actual access" to facts that contradicted one or more of their alleged misstatements or about having "detailed involvement" in the minutia of the Utility's operations such that access can be inferred. *Intuitive Surgical*, 759 F.3d at 1062. Nor have plaintiffs alleged any facts from any witnesses, must less facts showing that the Individual Defendants were involved in making the allegedly false statements. *Id*. Because of this pleading failure, plaintiffs cannot rely on the core operations doctrine to satisfy their burden of alleging scienter.

            4.    <u>Plaintiffs Have Not Alleged Scienter Based On Public Statements Made By The Governor & CPUC</u>

Plaintiffs also argue that they have pled a strong inference of scienter because "[d]uring the Class Period, the California government regularly informed PG&E that its preparation for de-energization was inadequate." ECF No. 65, p. 27 (citing AC ¶¶ 153-160). This argument fails. Each of the allegations referenced by plaintiffs relates to public statements made by Governor Newson or CPUC representatives between October 12, 2019 and "December 20, 2020 [sic]" criticizing various aspects of the Utility's de-energizations in October 2019. *Id*. ¶¶ 153-160. By that time, it had been months since the last alleged misstatement. *Id*. ¶ 123 (June 3, 2019 press release). Nowhere in the AC do plaintiffs allege that the Utility was "regularly informed" by government officials that its de-energization

---

[5] Many of the cases cited by plaintiffs have nothing to do with the core operations doctrine. *See W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731, 2015 WL 3755218, at \*14 (E.D. Pa. June 16, 2015); *Simmons Investments, Inc. v. Conversational Computing Corp.*, No. 09-CV-2345-EFM/KMH, 2011 WL 673759, at \*6 (D. Kan. Feb. 17, 2011); *KB Partners I, L.P. v. Barbier*, 907 F. Supp. 2d 826, 832 (W.D. Tex. 2012).

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

preparations were inadequate before the statements at issue were made.

Obviously, events that occur after the allegedly false statements provide no basis to infer that the Individual Defendants were aware of those facts when the alleged misstatements were made.  Both of the cases cited by plaintiffs involve situations where the defendants were informed by the FDA about adverse facts *before* they made the statements at issue.  *See Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 708 (9th Cir. 2016); *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 811 (C.D. Cal. 2011).  Here, the post-fraud revelation of facts is insufficient to allege scienter.

### 5.   Plaintiffs Have Not Pled Any Motive That Would Support Scienter

Finally, plaintiffs argue that the Individual Defendants had a motive to deceive – *not PG&E's investors* but – "California's legislative and executive branches" because if they were not convinced that the Utility "could operate safely," then PG&E's bankruptcy plan would not be approved by the Governor and CPUC and the Legislature might "force a government takeover or municipalization of PG&E."  ECF No. 65, p. 28.  None of this is alleged in the AC, and this argument should be disregarded.[6]  *See Sheski v. Shopify (USA) Inc.*, 19-cv-06858-HSG, 2020 WL 2474421, at *4 n.2 (N.D. Cal. May 13, 2020) (complaints cannot be amended through allegations made in an opposition to a motion to dismiss).

Moreover, a motive to deceive investors may "provide some reasonable inference of intent," but it is "not independently sufficient" to infer scienter.  *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012).  Several limiting principles apply to motive allegations.  First, "generalized assertions of motive, without more, are inadequate to meet the heightened pleading requirements" applicable to securities fraud claims.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1005 (9th Cir. 2009).  Second, a motive to deceive investors cannot be gleaned from the desire to achieve general corporate goals.  *See In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) ("allegations of

---

[6] Contrary to plaintiffs' assertion, the Ninth Circuit has not held that the relevant question is whether the Individual Defendants have a general "motive to lie" as opposed to "a motive to lie to investors."  ECF No. 65, p. 28, fn. 11 (citing *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014)).  Plaintiffs do not allege a general motive to lie in any event.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

routine corporate objectives such as the desire to obtain good financing and expand are not, without more, sufficient to allege scienter; to hold otherwise would support a finding of scienter for any company that seeks to enhance its business prospects."). Third, motive must be assessed on an individual-by-individual basis. *See Reese*, 747 F.3d at 570-571 (analyzing why a particular officer defendant must have had a motive to deceive investors).

Plaintiffs' argument that the Individual Defendants had a motive to deceive because they wanted to keep PG&E operating as a going concern is insufficient to infer scienter. The Ninth Circuit has rejected the notion that such a generalized, non-personal, and routine corporate objective suggests scienter. *See Rigel*, 697 F.3d at 884.

### D.       **Plaintiffs Have Failed To Allege Loss Causation**

Plaintiffs argue that the challenge to their loss causation allegations should be rejected because it is generally improper on a Rule 12(b)(6) challenge, the Individual Defendants have misstated Ninth Circuit law on loss causation, and their loss causation allegations are sufficient. ECF No. 65, p. 28-30. None of these arguments has merit.

First, district courts, including this one, have dismissed Rule 10b-5 claims based on insufficient loss causation allegations. *See N.Y. Hotel Trades Council & Hotel Ass'n of N.Y.C., Inc. Pension Fund v. Impax Labs. Inc*., No. 16-cv-06557-HSG, 2019 WL 3779262, at *2 (N.D. Cal. Aug. 12, 2019) (dismissing claim on loss causation grounds); *Fleming v. Impax Labs., Inc*., No. 16-cv-06557-HSG, 2018 WL 4616291, at *4-5 (N.D. Cal. Sept. 7, 2018) (same); *Uber*, 2018 WL 4181954, at *8-9 (same). The Ninth Circuit's decision in *In re Gilead Scis. Sec. Litig*., 536 F.3d 1049 (9th Cir. 2008), does not contradict these decisions. In *Gilead*, the Court merely recognized that the dismissal of a Rule 10b-5 claim on loss causation grounds is "inappropriate" "so long as the complaint alleges facts that, if taken as true, plausibly establish loss causation." *Id*. at 1057. Here, the AC does not do so.

Second, the Individual Defendants have not misstated Ninth Circuit law. A plaintiff is not required to plead a "revelation of fraud in the marketplace" theory to establish loss causation in all Rule 10b-5 claims. *See Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 754 (9th Cir. 2018). However, where a plaintiff relies on a "market revelation

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

of fraud" theory of loss causation, the complaint must allege facts demonstrating "that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity rather than by changing market conditions, changing investor expectations, or other unrelated factors." *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014); *see also First Solar*, 881 F.3d at 754. Here, plaintiffs must satisfy the *Loos* standard because their loss causation theory is based on "corrective disclosures." ECF No. 65, p. 29-30.

Third, plaintiffs' attempt to defend the sufficiency of their corrective disclosure allegations fails. Plaintiffs argue that statements that the Utility's vegetation management program "would catch dangerous trees" were revealed to be false on August 14, 2019, when the PG&E monitor's report disclosed that the program "left more than one dangerous tree every hundred feet inspected." ECF No. 65, p. 29. Plaintiffs do not identify which statements were supposedly rendered false by this disclosure or when such statements were made. Plaintiffs have not alleged that the Individual Defendants made any representations about "catching dangerous trees." Moreover, plaintiffs' loss causation allegation regarding this disclosure merely states that the report revealed "that PG&E's vegetation management was of 'questionable' value." AC ¶ 273. Plaintiffs do not allege how this revelation contradicts a prior statement. This is the same type of disconnect that led this Court to reject the loss causation allegations in *N.Y. Hotel*, *Fleming*, and *Uber*.

Next, plaintiffs argue that statements about "the steps PG&E had taken to prepare for de-energization" were revealed to be false when it was disclosed on September 26, October 8, and October 10, 2019 that "PG&E's de-energizations were shambles." ECF No. 65, p. 29. Plaintiffs do not specify which alleged statements this argument relates to, much less which alleged facts rendered them false. Plaintiffs' descriptions of the statements and disclosures at issue are so general as to be meaningless.

Plaintiffs further argue that statements that "PG&E could limit the length and scope of de-energizations" were revealed to be false when it was disclosed on October 8, October 23, October 25, and October 28, 2019 that the Utility was conducting widespread de-energizations. ECF No. 65, p. 29. Plaintiffs do not connect these disclosures to specific

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

statements, and they fail to explain how or why such announcements contradict prior statements about limiting the length and scope of de-energizations. For all that appears in the AC, the market was reacting to the fact that the de-energizations were necessitated by dangerous conditions that could lead to fires and subject PG&E to potential liability.

Plaintiffs also argue that the CPUC's announcements of a regulatory investigation of the Utility's de-energization practices on October 14 and October 28, 2019 disclosed facts that were "concealed" from investors about the Utility's "inadequate" preparations. ECF No. 65, p. 30. Plaintiffs do not respond to the argument that these disclosures are impermissibly based on the announcement of a regulatory investigation. *See* ECF No. 60, p. 28-29 (citing *N.Y. Hotel*, 2019 WL 3779262, at *2, and *Fleming*, 2018 WL 4616291, at *2). Plaintiffs' reliance on *Gilead* does not rectify this problem.

In *Gilead*, the Ninth Circuit upheld a loss causation theory where the market's negative reaction occurred three months after the disclosure of the fraud (Gilead's improper drug labeling practices) in a FDA warning letter. 536 F.3d at 1057-58. The Court held that investors reacted to the company's announcement of the decline in drug sales, which was latently caused by physicians' reaction to the warning the letter. *Id*. at 1058. Courts have limited *Gilead* to situations where a latent market reaction occurs from a disclosure that is "difficult to process or understand by the average investor." *Bonanno v. Cellular Biomedicine Grp., Inc.*, No. 15-cv-01795-WHO, 2016 WL 4585753, at *5 (N.D. Cal. Sep. 2, 2016). *Gilead* does not apply here. Plaintiffs do not allege a latent market reaction theory in the AC. Nor do they claim that the market was unable to understand the meaning of the CPUC's two investigation announcements. To the contrary, plaintiffs allege that the market negatively reacted to them, which, without more, is legally insufficient. *See N.Y. Hotel*, 2019 WL 3779262, at *2; *Fleming*, 2018 WL 4616291, at *2.

Finally, plaintiffs argue that statements about the sufficiency of the Utility's "equipment inspections" were revealed to be false when it was disclosed on October 2, October 24, October 25, and October 28, 2019 that the Utility was responsible for causing certain fires in Northern California, including the Kincade Fire. ECF No. 65, p. 30. As

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

before, plaintiffs fail to connect these disclosures to specific misrepresentations. They also fail to distinguish between the publication of negative news affecting PG&E (the occurrence of fires for which it might be liable) and the publication of information correcting a prior disclosure or revealing an omitted fact. Plaintiffs' loss causation allegations fail.

## V.   PLAINTIFFS' SECTION 20(A) CLAIM ALSO MUST BE DISMISSED

Plaintiffs argue that Section 20(a) liability is properly alleged for any "high-level executive" who is "involved in a company's day-to-day management." ECF No. 65, p. 31. However, plaintiffs' own authority belies their argument. Courts do not presume that senior officers have control over the primary violator and require specific factual allegations demonstrating such control for each officer defendant. *See Ire BofI Holding, Inc. Sec. Litig.*, No. 315CV02324GPCKSC, 2017 WL 2257980, at \*22, 24 (S.D. Cal. May 23, 2017) (analyzing specific allegations pled against each officer defendant); *Aqua Metals*, 2019 WL 3817849, at \*9-10 & fn. 4 (same and concluding that control person liability was sufficiently pled for CEO and COO because they were alleged to be "direct participants in the orchestration of the 'dog and pony shows'" and for CFO because he was alleged to have "day-to-day involvement" with the company's management). Plaintiffs have not pled any specific control allegations for any of the Individual Defendants. AC ¶¶ 24-26, 342. Therefore, their Section 20(a) claim also must be dismissed.

## VI.   CONCLUSION

For the foregoing reasons, the Court should dismiss each of the claims asserted against the Individual Defendants in the amended class action complaint.

Dated: July 10, 2020                    McDERMOTT WILL & EMERY LLP


By:   */s/ Steven S. Scholes*
      STEVEN S. SCHOLES
      Attorneys for Individual Defendants
      WILLIAM JOHNSON, GEISHA
      WILLIAMS, and SUMEET SINGH

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES