UNITED STATES DISTRICT COURT   *ORIGINAL*

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable HAYWOOD S. GILLIAM, JR., Judge

CHRISTOPHER VATAJ, Individually )  **Motion for Preliminary**
and on Behalf of All Others    )  **Approval of Class**
Similarly Situated,            )  **Action Settlement**
                               )
          Plaintiff,           )
                               )
  vs.                          )  NO. C 19-06996 HSG
                               )
WILLIAM D. JOHNSON, JOHN R.    )
SIMON, GEISHA WILLIAMS and     )  Pages 1 - 12
JASON P. WELLS,                )
                               )
          Defendants.          )  Oakland, California
_____)  Thursday, March 11, 2021


**REPORTER'S TRANSCRIPT OF TELEPHONIC PROCEEDINGS**

APPEARANCES (TELEPHONIC):

For Plaintiff:          The Rosen Law Firm, P.A.
                        275 Madison Avenue, 40th Floor
                        New York, New York  10016
                    BY: JONATHAN R. HORNE, ATTORNEY AT LAW

                        Pomerantz LLP
                        10 South LaSalle Street, Suite 3505
                        Chicago, Illinois  60603
                    BY: LOUIS C. LUDWIG, ATTORNEY AT LAW


        (Appearances continued next page)

Reported By:       Raynee H. Mercado, CSR No. 8258


    Proceedings reported by electronic/mechanical stenography;
transcript produced by computer-aided transcription.

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*

**A P P E A R A N C E S (CONT'D)**

For Defendant PG&E:       LATHAM & WATKINS
                          505 Montgomery Street, Suite 2000
                          San Francisco, California  94111
                     BY:  GAVIN M. MASUDA, ATTORNEY AT LAW

                          Latham & Watkins LLP
                          885 Third Avenue
                          New York, New York  10022-4834
                     BY:  JAMES E. BRANDT, ATTORNEY AT LAW

                          Latham & Watkins LLP
                          355 South Grand Avenue, Suite 100
                          Los Angeles, California  90071-1560
                     BY:  MICHAEL J. REISS, ATTORNEY AT LAW


For DEFENDANTS:           McDermott Will & Emery LLP
                          444 West Lake Street, Suite 4000
                          Chicago, Illinois  60606-0029
                     BY:  STEVEN S. SCHOLES, ATTORNEY AT LAW

                          McDermott, Will & Emery LLP
                          2049 Century Park East, Suite 3200
                          Los Angeles, California  900067-3206
                     BY:  JASON D. STRABO, ATTORNEY AT LAW



                          --o0o--

Thursday, March 11, 2021                              2:01 p.m.

                        P R O C E E D I N G S

                           (Teleconference)

          **THE CLERK:**  We're calling CV19-6996, Vataj versus Johnson.

     Please state your appearances for the record.

          **MR. HORNE:**  Jonathan Horne from the Rosen Law Firm for plaintiffs.  Good afternoon.

          **MR. MASUDA:**  Good afternoon, Your Honor.  Gavin Masuda of Latham & Watkins for PG&E.  And also on the phone with me, I've got James Brandt of Latham & Watkins and Michael Reiss of Latham & Watkins for PG&E.

          **MR. SCHOLES:**  And good afternoon.  This is Steve Scholes for the individual defendants Williams, Johnson and Singh.  And with me on the line as well is my partner Jason Strabo.

          **THE COURT:**  All right.  Good afternoon to everyone.

     So we're here for a hearing on the motion for preliminary approval that was filed.  I'll say that my overall impression is that the settlement seems fair and adequate.  But I have some targeted questions that I want to walk through with you today.

     The first is a couple of procedural things.

     I know that the parties have filed twice now something that you're styling "stipulation and agreement of settlement,"

which I take it is just the settlement agreement.  And normally that simply gets filed as an attachment to the motion for preliminary approval.

Is there anything you're expecting me to do with that beyond simply acknowledging that it is the settlement agreement?

**MR. HORNE:**  Yeah, thank you, Your Honor.  Yes, it is -- it is just the settlement agreement.  And, no, we do not -- we're not asking the court to do anything with respect to the settlement agreement.

(Off-the-record discussion.)

**MR. HORNE:**  Oh, I apologize.  This is Johnson Horne from the Rosen Law Firm for plaintiffs.

**THE COURT:**  All right.  So I'll simply approach that the way that I usually do, which is to reference that it's normally an exhibit.

Second logistics question, there was a reference to something called the "proof of claim form," and there's an indication that it was attached as Exhibit A3 to the preliminary approval motion, but we couldn't readily find it in the filings.

If you all can just give me a docket number where that is, that would be helpful.

**MR. HORNE:**  It -- apologize.  It is docket number 81-4.

**THE COURT:** 81-4. All right. And is there a page number within that?

(Simultaneous colloquy.)

**MR. HORNE:** Sorry. I didn't catch that.

**THE COURT:** Is there a page number within that or, is 81-4 in its entirety the proof of claim form?

**MR. HORNE:** 81-4 in its entirety is the proof.

**THE COURT:** Okay. That's helpful.

So there -- there's sort of a clicking or banging noise. If everyone who's not talking can just mute, except when you are talking, that would be helpful.

All right. Next question is more substantive about the release. And, really, the question is a concern or at least a question about the identical factual predicate requirement because the piece that looked at least somewhat different from what I'm accustomed to seeing is the provision that releasing parties are waiving claims arising out of, and there's an ellipsis there, but facts, circumstances, allegations, misrepresentations, and/or omissions that were or could have been alleged in the initial complaint.

Normally, the way that this is framed, at least that I've seen it, is the release extends to all claims that were brought or could have been brought based on the facts actually alleged in the complaint.

And I don't know what the parties are thinking would be

encompassed by this "could have been alleged factual" language.  But it struck me that that was at least different than what I usually see from an identical factual predicate standpoint, because when you start to think about what could have been alleged, that seems to me to start to pull away from the anchor of the identical factual predicate.

I don't know who wants to address that.

Mr. Horne, do you want to start?

**MR. HORNE:**  I -- I would be happy to, Your Honor.

The -- I believe the release claims is meant to sweep only the claims relating to the purchase, acquisition, sale, disposition, or holding of PG&E common stock during the class period.

I don't want to state something incorrect about the interpretation of the release.  If I may confer with the defendants to ensure we're on the same page?

**THE COURT:**  Sure.

I mean, would -- the easiest way would be to just take out the reference to "facts that could have been alleged."  I don't know if the defendants have a perspective on that that they want to discuss now.

**MR. MASUDA:**  Your Honor, Gavin Masuda for PG&E.  We hear the concern.  I agree with plaintiff's counsel, with Mr. Horne, that we'd be happy to confer and come up with language along the lines the court suggested.  I do not

believe that our intent was to suggest anything in the release other than what, you know, the court is familiar seeing and -- and what the court referenced.

So I believe it's just a -- an issue in the drafting that we can fix.

THE COURT:  All right.  Well, why don't you meet and confer.  And then how long would you need to confer?  Generally, when something like that is changed, the parties just come back and say, this has been modified.  Here's how it's been modified.  And it's just the supplemental submission.

How long do you need to do that, a week?

(Simultaneous colloquy.)

THE COURT:  Whoever wants to go first, just be sure you identify yourself before you talk.

MR. HORNE:  This is Jonathan Horne.

Yes, one week would be fine.

MR. MASUDA:  One -- one week, I agree, Your Honor.  And just to be clear, our objective was, you know, to, in fact, release claims -- all securities claims over the class period.

And we do you understand the -- the point that Your Honor referenced, but I do think that we'll have to confer and come up with some language we believe works to achieve that end.

THE COURT:  All right.  That -- that sounds fine with

me.

Now, the second question that I had about the release mechanics is that the way, as I understand it, the settlement is structured, even class members who don't file a claim will have their rights waived if they don't affirmatively opt out.

The -- the immediate thought that I had is how confident are you that you can reliably identify all the members of the class so that they get the notice necessary to make that call?

I can understand from one perspective that if someone opts not to opt out, then they made that choice.  But, really, my level of comfort with that depends on the reliability of the mechanism that is being proposed to identify folks, that they're presented with that choice cleanly.

**MR. HORNE:**  Your Honor, this is Jonathan Horne.

We have retained a claims administrator for the approval of the court who has experience -- who has done this hundreds of times.  And -- and the way they typically do it is they -- they first reach out to persons who can be identified by the transfer agent.

But second, and -- and much more substantively, they send notice to hundreds, maybe thousands of nominees, and -- and these would be things like Robin Hood, things like various brokers, and either provide those brokers with notice to forward to their customers or obtain addresses of the customers themselves.

And that way, we -- it is the way it's typically done in these actions, and that way we're able to reach class members based on their accounts -- (inaudible/unintelligible) --

**THE COURT:** I see. So in your view, and perhaps based on your experience, that mechanism does everything that can be done to minimize the person who shows up in two years and says, I -- I bought stock, too, but I never heard about the opportunity to opt out.

You're -- it sounds to me as though at least in your experience, this pretty well captures the universe of potential plaintiffs.

**MR. HORNE:** Yes, Your Honor.

**THE COURT:** All right.

How is -- and this maybe asking for an -- confirmation or denial of a negative.

Is there any way to quantify that from the perspective of the claims administrator or based on your experience in similar cases?

Is there -- is there an ability to even reach an estimate of the likely percentage of stock purchasers who are reached using these tools?

**MR. HORNE:** That information, I don't have it off the top of my head. We may be able to combi- -- to compile something. The information we typically receive is the number of -- of claims forms that were sent and the number of claim

forms that were returned and the number of those claims that were valid.

And that information is presented in most cases, and we may be able to secure something for the court's review. But I'm not aware of any comprehensive study or anything like that. And my own experience is anecdotal and far too limited to provide the court with any -- any -- any real answer.

THE COURT: I see.

Is that something you can try to pull together?

MR. HORNE: We will pull together what we can, Your Honor.

THE COURT: Okay. And it's -- it can only be as good as your inputs, and I understand that by -- by its nature, if there's a -- level of uncertainty in it that we'll never be able to completely get past, but if you could do that, I think that would be useful as well.

And, again, if you -- if you can do that within the week, that's fine. If you need a little more time to do it, that's also fine.

MR. HORNE: We could do it within a week, Your Honor.

THE COURT: All right.

Next question is pretty straightforward. The -- I see that the cy pres recipient is the USF Investor Justice Clinic. Obviously under *Dennis*, I have to make a nexus finding at least at the time of final approval and can glean from the

name of the clinic why -- what you think the nexus is.

But can the parties just submit a short, you know, one-paragraph or few-sentence explanation of what that entity is and what they do and why that entity satisfies the nexus requirement that the Ninth Circuit sets out in *Dennis*.

MR. HORNE:  Yes, Your Honor.

THE COURT:  All right.  And then the last question is I know that there is a -- a confidential provision under which the defendants can terminate the agreement if an opt-out threshold is reached.  I can understand full well the importance of not having that threshold be public.  But I would like to see it, and it can be filed under seal just so that I can know what the provision is and take it into account in assessing the fairness of the settlement.

I assume that the parties don't have a problem doing that.

MR. HORNE:  We will do that, Your Honor.

THE COURT:  All right.

Let's see.  I think those are the questions that I had.

Were there further matters that either plaintiffs' counsel or defendants' counsel have?

Mr. Horne?

MR. HORNE:  Oh, nothing from us, Your Honor.

THE COURT:  Mr. Masuda?

MR. MASUDA:  Nothing further, Your Honor.

THE COURT:  And Mr. Scholes?

**MR. SCHOLES:** Nothing, Your Honor. Thank you very much.

**THE COURT:** All right. You're welcome.

So I will look for those -- those supplemental filings in about a week. And unless I tell you otherwise, you can take it that the motion is submitted once I receive those and I won't need anything further, and I'll just aim to issue an order as soon as I can.

**UNIDENTIFIED SPEAKER:** Thank you, Your Honor.

**THE COURT:** You're welcome.

(Proceedings were concluded at 2:17 P.M.)

--o0o--


## CERTIFICATE OF REPORTER


I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was taken, and further that I am not financially nor otherwise interested in the outcome of the action.

_____

Raynee H. Mercado, CSR, RMR, CRR, FCRR, CCRR

Monday, March 15, 2021

*RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR, CCRR (510) 565-7228*