UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER VATAJ,<br><br>    Plaintiff,<br><br>    v.<br><br>WILLIAM D. JOHNSON, et al.,<br><br>    Defendants. | Case No. 19-cv-06996-HSG<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL**<br><br>Re: Dkt. Nos. 88, 98 |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Co-Lead Plaintiffs Ironworkers Local 580 Joint Funds, Ironworkers Locals 40, 361 & 417 Union Security Funds and Robert Allustiarti. *See* Dkt. No. 88. The parties have reached a settlement regarding Plaintiffs' claims and now seek the required court approval. The Court held a telephonic hearing on March 11, 2021. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion.

I.   **BACKGROUND**

    A.   **Factual Background**

Plaintiffs bring this securities class action against Defendants PG&E Corporation and certain of its officers and directors[1] regarding representations that Defendants made about PG&E's safety protocols following PG&E's bankruptcy and in the wake of several California wildfires caused by PG&E equipment. *See generally* Dkt. No. 58 ("FAC"). Plaintiffs seek to represent a class defined as "all persons and entities who purchased or otherwise acquired PG&E securities"

---

[1] Although the original complaint was filed against William D. Johnson, John R. Simon, Geisha Williams, Jason P. Wells, and Sumeet Singh, the amended complaint only lists Messrs. Johnson, Williams, and Singh.

on the New York Stock Exchange between December 13, 2018, and October 28, 2019. *See id.* at ¶¶ 327.

Plaintiffs allege that following the devastating California wildfires between 2015 and 2018, PG&E initiated three measures in an effort to reduce the risk of future wildfires: (1) temporary power shutoffs when high winds and low humidity made wildfires particularly likely (what Plaintiffs refer to as "de-energization"); (2) visual inspections of all of its poles located in high fire threat areas; and (3) inspection for and removal of vegetation overhanging or abutting its power lines. *See id.* at ¶¶ 2, 7–9. The complaint further alleges that Defendants, individual officers at PG&E, made materially false and misleading statements regarding the scope of and protection offered by these safety measure. *Id.* at ¶¶ 17, 53–54, 69–142. In particular, Plaintiffs allege that Defendants failed to disclose that: (i) PG&E's new wildfire prevention and safety protocols were inadequate and missed dangerous conditions; and (ii) PG&E was unprepared for the rolling power outages. *See id.* at ¶¶ 10–12, 69–72, 109–10, 127–34, 236–38, 252, 263–64.

According to the complaint, the truth about Defendants' safety measures was revealed after PG&E mishandled rolling power outages in September and October 2019. *See, e.g.*, *id.* at ¶ 2. Plaintiffs contend that PG&E cut power to millions of Californians for extended periods while providing little notice and insufficient information to stakeholders to prepare in advance. *Id.* Plaintiffs explain that PG&E's de-energizations drew intense criticisms from California's elected representatives. *See id.* at ¶¶ 149–153. In addition, the California Public Utilities Commission launched an investigation into the de-energizations. *See id.* at ¶¶ 67, 155–60. As a result, PG&E's stock prices fell. *See, e.g.*, id. at ¶¶ 273–326.

Based on these allegations, Plaintiffs assert causes of action for violations of Sections 10(b) and 20(a) of the Securities and Exchange Act on 1934, and Rule 10b-5, 15 U.S.C. §§ 78j(b), 78b-1, 78t(a). *See id.* at ¶¶ 337–51.

**B. Procedural History**

Christopher Vataj initially filed this action on December 25, 2019. *See* Dkt. No. 1. Three movants then filed timely motions seeking appointment as lead plaintiff and approval of lead counsel under the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Civil Local

Rule 3-7(b): (1) Iron Workers Local 580 Joint Funds and Ironworkers Locals 40, 361 & 417 Union Security Funds ("Iron Workers Funds"), Dkt. No. 19; (2) Robert Allustiarti, Dkt. No. 23; and (3) Bob Vavla, Dkt. No. 25. On January 6, 2020, Mr. Vavla filed a notice of withdrawal of his motion. *See* Dkt. No. 32. Iron Workers Funds and Mr. Allustiarti subsequently filed a stipulation agreeing to be co-lead plaintiffs, and selected and retained Pomerantz LLP and The Rosen Law Firm, P.A. to serve as co-lead counsel. *See* Dkt. No. 33. On February 3, 2020, the Court granted the stipulation appointing Plaintiffs as Co-Lead Plaintiffs. *See* Dkt. No. 48.

Plaintiffs then filed an amended class action complaint on April 17, 2020. *See* FAC. The individual Defendants moved to dismiss the amended complaint. *See* Dkt. No. 59. Before briefing was complete, the parties mediated this action before the Hon. Layn R. Phillips (ret.) on April 23, 2020. *See* Dkt. No. 88-1 at 6. Although the parties did not reach a settlement that day, they continued discussions with the mediator's assistance. *Id.* After exchanging numerous offers and counteroffers, the mediator proposed that the parties settle the claims asserted in this action for $10 million. *Id.* The parties accepted the mediator's proposal, and filed a notice that they had reached a settlement in principle. *See* Dkt. No. 73. The parties then worked to finalize the settlement. Following the hearing on the motion for preliminary approval, and in response to the Court's concerns about the scope of the release, the parties filed a supplemental brief in support of their motion, which included revised language. *See* Dkt. No. 103 at 1–5.

**C. Settlement Agreement**

With the assistance of a mediator, the parties entered into a settlement agreement, fully executed on March 9, 2021. Dkt. No. 98 ("SA"). The key terms are as follows:

Class Definition: The Settlement Class is defined as:

> All persons and entities who purchased the common stock of PG&E on the New York Stock Exchange between December 13, 2018, and October 28, 2019, both dates inclusive.

SA Sec. A, ¶ 47.

Settlement Benefits: Defendant will make a $10 million non-reversionary payment. *Id.* Sec. A, ¶¶ 1, 46. The gross Settlement Fund also includes Court-approved attorneys' fees and costs, settlement administration fees, any additional payment to Plaintiffs as class representative,

3

1    and payments to class members.  SA Sec. A, ¶ 34.  The cash payments to the class will be based

2    on a "recognized loss formula" for each share of PG&E common stock, which will account for

3    factors including when the PG&E common stock was purchased or otherwise acquired during the

4    class period; the amount of stock acquired; and whether such stock was sold, and if so, the timing

5    and proceeds of the sales.  *Id.* at Sec. A, ¶ 39; *id.* at Sec. D, ¶¶ 1–2; *see also* Dkt. No. 98 at 38–39

6    ("Proposed Plan of Allocation").  Each class member must submit a Proof of Claim to the

7    settlement administrator to be eligible for a payment from the Settlement Fund.  *See* SA at Sec. A,

8    ¶¶ 22, 41; *see also id.* at Sec. D, ¶¶ 3–8; *see also* Dkt. No. 80-4, Ex. A-3 ("Proof of Claim and

9    Release" form).  The Settlement Fund will be distributed in the following way:

- Attorneys' Fees:  $2,500,000 (25% of the Settlement Fund)
- Attorneys' Litigation Costs:  $100,000
- Notice Administration and Claims Processing:  $265,000
- Award to Co-Lead Plaintiffs:  $5,000 each ($15,000 total)
- Amount of Distribution to Class Members:  $7,120,00

SA Sec. A, ¶ 34; *id.* at Sec. B, ¶ 2; *id.* at Sec. D, ¶ 2; *id.* at Sec. H, ¶¶ 1–5; *see also* Dkt. No. 88-1 at 15–16, 25.  The parties have estimated that after the deductions identified above, individual class members will receive approximately $.014 per share of PG&E common stock.  *See* Dkt. No. 88-2 (Ludwig Decl.) at ¶ 5.

*Cy Pres* Distribution:  If six months after the initial distribution of funds any funds remain in the Settlement Fund by reason of uncashed checks or otherwise, such funds shall be re-distributed to class members who have cashed their checks and who would receive at least $20 from such re-distribution.  SA at Sec. D, ¶ 12.  If any funds still remain in the Settlement Fund six months after such re-distribution, then the balance will be contributed to the University of San Francisco School of Law's Investor Justice Clinic.  *See id.*

Release:  Under the settlement agreement, all class members will release:

> [A]ny and all claims, including Unknown Claims, damages, actions,

4

> obligations, attorneys' fees, indemnities, subrogations, duties, demands, controversies, and liabilities of every nature, at law or in equity (including, without limitation, claims under federal and state securities laws, and at common law), suspected or unsuspected, accrued or unaccrued, matured or unmatured, whether arising out of or relating to the period prior to or after the date of the Initial Complaint that any Releasing Persons in their capacity as a shareholder of PG&E (a) asserted in the Initial Complaint, the Complaint, or the Action; or (b) could have been asserted in any forum that arise out of, are based upon, or are related in any way directly or indirectly, in whole or in part, to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Initial Complaint, the Complaint, or the Action and that relate to the purchase, acquisition, sale, disposition or holding of PG&E common stock during the Class Period.

*See* Dkt. No. 103 at 1. The Settlement class members further agree to waive:

> [A]ny and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:
>
> > A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

SA at ¶ 52.

Class Notice: A third-party settlement administrator will mail class notices within fourteen days of the Court's order granting preliminary approval to all class members who can be identified with reasonable effort by the Claims Administrator, advising them of the Settlement and of the availability of documentation on the settlement website. *See* Dkt. No. 88-1, Ex. 1 ("Schachter Decl.") at ¶¶ 5–6; *see also* Dkt. No. 88-1 at 19. The settlement administrator will also publish a summary notice via a newswire with national distribution, within 21 days of the Court's order granting preliminary approval. *See* Schachter Decl. at ¶¶ 8–9; *see also* Dkt. No. 88-1 at 19. And finally, the settlement administrator will post the key case and settlement materials on the following website: www.pgesecuritiessettlement.com. *See* Schachter Decl. at ¶ 7, 11.

Incentive Award: The named Plaintiffs may apply for an incentive award of no more than $5,000. *See* Dkt. No. 88-1 at 16.

<u>Attorneys' Fees and Costs</u>: Class Counsel will file an application for attorneys' fees not to exceed 25% of the gross settlement fund, or $2.5 million, as well as costs not to exceed $100,000. SA at Sec. H, ¶¶ 1–5.

### D. Supplemental Agreement

Here, the parties also reference a confidential supplemental agreement as part of the class action settlement for which they seek preliminary approval. *See* Dkt. No. 105. The supplemental agreement details the conditions under which Defendants may terminate the settlement if the number of requests for exclusion from the settlement class exceed a certain amount. *See* Dkt. No. 88-1 at 15.

During the preliminary approval hearing, the Court directed the parties to file the supplemental agreement for the Court's review. The parties did so, and filed the document provisionally under seal. However, the parties failed to comply with the requirements of Civil Local Rule 79–5, and did not explain why the supplemental agreement should be sealed in its entirety or confirm that their request is "narrowly tailored to seek sealing only of sealable material." *See* Civil L.R. 79-5(b). The Court therefore **DIRECTS** the parties to file a motion to seal the supplemental agreement that comports with Civil L.R. 79-5.

## II. PROVISIAL CLASS CERTIFICATION

The plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Class certification is a two-step process. *First*, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. *Second*, it must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), it must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"The criteria for class certification are applied differently in litigation classes and

settlement classes." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai II*"). When deciding whether to certify a litigation class, a district court must consider manageability at trial. *Id*. However, this concern is not present in certifying a settlement class. *Id*. at 556–57. In deciding whether to certify a settlement class, a district court "must give heightened attention to the definition of the class or subclasses." *Id*. at 557.

### A. Rule 23(a) Certification

#### i. Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." The Court finds that numerosity is satisfied here because joinder of the thousands of estimated class members would be impracticable. *See* Dkt. No. 88-1 at 21. Although the exact class size cannot be definitively ascertained because the vast majority of class members hold their securities through a broker, bank, or other financial institution, billions of shares of PG&E common stock were traded during the class period. *See* Dkt. No. 88-1 at 21. And Plaintiffs estimate that they will send approximately 400,000 notices to potential class members, and they anticipate approximately 80,000 claims will be submitted. *See* Schachter Decl. at ¶¶ 13–14.

#### ii. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." A contention is sufficiently common where "it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions' ― even in droves ― but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Even a single common question is sufficient to meet this requirement. *Id.* at 359.

Common questions of law and fact in this action include whether (1) Defendants' alleged

acts violated the federal securities laws; (2) statements made by Defendants during the Class Period misrepresented material facts about PG&E; (3) the price of PG&E common stock was artificially inflated during the Class Period; and (4) members of the Class have sustained damages and the proper measure of such damages. *See* Dkt. No. 88-1 at 21. Although the amount to which each class member is entitled will differ, the issues described above are common to the proposed Settlement Class. Accordingly, the Court finds that the commonality requirement is met in this case.

### iii. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (quotation omitted).

Co-Lead Plaintiffs' claims are both factually and legally similar to those of the putative class. Co-Lead Plaintiffs allege that, like the other class members, they purchased PG&E common stock at prices that were inflated because Defendants made false and materially misleading statements and omissions during the Class Period. *See, e.g.*, FAC at ¶ 22. This is sufficient to satisfy the typicality requirement.

### iv. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent the interests of the class." The Court must address two legal questions: (1) whether the named Plaintiffs and their counsel have any conflicts of interest with other class members and (2) whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim

1  and the class claims are so interrelated that the interests of the class members will be fairly and
2  adequately protected in their absence." *Id.*

3  The Court is unaware of any actual conflicts of interest in this matter and no evidence in
4  the record suggests that either Co-Lead Plaintiffs or Co-Lead Counsel have a conflict with other
5  class members.  Co-Lead Counsel have been appointed class counsel in numerous federal and
6  state class actions.  *See* Dkt. No. 88-4, Ex. 2; Dkt. No. 88-5, Ex. 3.  The Court finds Co-Lead
7  Counsel and Co-Lead Plaintiffs have prosecuted this action vigorously on behalf of the class to
8  date, and will continue to do so.  The adequacy of representation requirement, therefore, is
9  satisfied.

### B.    Rule 23(b)(3) Certification

To certify a class, a plaintiff must satisfy the two requirements of Rule 23(b)(3).  First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.*

#### i.    Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quotations omitted).  The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member."  *Id.* (quotations omitted).  A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof."  *Id.* (quotations omitted).

The Court concludes that for purposes of settlement, common questions predominate here because the same operative facts apply to each proposed class member:  each class member purchased and/or acquired PG&E common stock during the Class Period and suffered losses in their shares' value as a result of prices that first were artificially inflated based on Defendants' alleged misrepresentations, then dropped once the truth about the limitations of PG&E's safety measures was later revealed.  *See* Dkt. No. 88-1 at 23–24; *see also* FAC at ¶¶ 2, 10–12, 17, 53–54,

69–142, 236–38, 252, 263–64. Although Class Members will need to rely upon individual evidence to some extent to calculate their individual damages, the "mere fact that there might be differences in damage calculations is not sufficient to defeat class certification." *Hyundai II*, 926 F.3d at 560 (quotations omitted).

### ii. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

Here, the Court concludes that a class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them. Further, this forum is appropriate, and there are no obvious difficulties in managing this class action.

The Court finds that the predominance and superiority requirements of Rule 23(b)(3) are met.

### iii. Class Representative and Class Counsel

Because the Court finds that Co-Lead Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints the Co-Lead Plaintiffs as class representatives. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts must consider when making that decision include:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

Co-Lead Counsel have efficiently investigated and litigated this case. As the Court explained in the order appointing the law firms of Pomerantz and Rosen Law to serve as co-lead counsel, both firms have extensive experience as lead counsel in securities class actions. *See* Dkt. No. 48.

## III.     PRELIMINARY SETTLEMENT APPROVAL

Finding that provisional class certification is appropriate, the Court considers whether it should preliminarily approve the parties' class action settlement.

### A.     Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quotations omitted). Such settlement agreements "'must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). A more "exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id*. (quotations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class;

11

(3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### B. Analysis

#### i. Evidence of Conflicts and Signs of Collusion

The first factor the Court considers is whether there is evidence of collusion or other conflicts of interest. *See Roes*, 944 F.3d at 1049. The Ninth Circuit has directed district courts to look for "subtle signs of collusion," which include whether counsel will receive a disproportionate distribution of the settlement, whether the parties negotiate a "'clear sailing' arrangement (*i.e.*, an arrangement where defendant will not object to a certain fee request by class counsel)," and whether the parties agree to a reverter that returns unclaimed funds to the defendant. *Id.*

#### a. Attorneys' Fees

As discussed above, the proposed settlement is non-reversionary with all unclaimed funds awarded to a *cy pres* recipient. *See* SA at Sec. D, ¶ 12. It also does not contain a clear sailing provision, and is not conditioned on any award of attorneys' fees or expenses. Moreover, any attorneys' fees will be compensated from the Settlement Fund itself.

Here, Co-Lead Counsel will request fees of $2.5 million (25% of the Settlement Fund) and costs of $100,000. When deciding to award attorney's fees and costs, the Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees award. *See*, *e.g.*, *In re Bluetooth Headset*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").

The Court recognizes that Co-Lead Counsel obtained significant results for the prospective class members, as discussed below in Section III.B.iii. Further, the agreement does not contemplate a disproportionate cash allocation between counsel and the class. *Cf. Roes*, 944 F.3d

United States District Court
Northern District of California

at 1051 ("Here, more of the available $2 million in settlement cash ultimately went to attorneys' fees ($950,000) than would be distributed to class members ($864,115)."). Even if the Court were to award 25% in attorneys' fees, the majority of the monetary settlement would still be distributed to class members. The Court is cognizant of its obligations to review class fee awards with particular rigor, and at the final approval stage will carefully scrutinize the circumstances and determine what attorneys' fees award is appropriate in this case. Accordingly, given that Counsel will not request a disproportionate amount of the settlement agreement and that the settlement is non-reversionary, the Court finds that this factor does not weigh against preliminary approval.

### b. *Cy Pres* Distribution

The Court must also evaluate whether the parties' proposed *cy pres* recipient is appropriate. A *cy pres* award must qualify as "the next best distribution" to giving the funds to class members. *Dennis*, 697 F.3d at 865. "Not just any worthy recipient can qualify as an appropriate *cy pres* beneficiary," and there must be a "driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Id.* (quotation omitted). That is to say, a *cy pres* award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class." *Id.* (quotation omitted). A *cy pres* distribution is not appropriate if there is "no reasonable certainty that any class member would benefit from it." *Id*. (quotation omitted).

Here, the parties have selected the University of San Francisco School of Law's Investor Justice Clinic as its *cy pres* recipient. The Clinic represents claimants in investor rights cases who earn less than $50,000 annually. *See* Dkt. No. 1-3 at 7–8. As the parties explain, the Clinic's "focus on vindicating investor rights and combating fraud [is] identical to the purpose of the statutes under which this lawsuit is brought . . . ." *Id.* at 7. The Court preliminarily finds that the University of San Francisco School of Law's Investor Justice Clinic shares the interests of the class members in preventing securities fraud. Accordingly, the Court preliminarily finds that there is a sufficient nexus between the *cy pres* recipient and the Settlement Class.

### ii. Preferential Treatment

The Court next considers whether the settlement agreement provides preferential treatment

13

to any class member. The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947. For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Lenovo*, 2018 WL 6099948, at *8 (quotations omitted).

      Although the Settlement Agreement authorizes the Co-Lead Plaintiffs to seek an incentive award of no more than $5,000 each for their role in this lawsuit, the Court will ultimately determine whether they are entitled to such an award and the reasonableness of the amount requested. Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). Plaintiffs must provide sufficient evidence to allow the Court to evaluate their award "individually, using 'relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . .'" *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request. Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor weighs in favor of preliminary approval. *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary" (emphasis omitted)).

      **iii.    Settlement within Range of Possible Approval**

      The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case.

      Here, the total settlement amount is $10 million, or approximately $.014 per share. Plaintiffs contend that this represents approximately 2% of their estimated $468 million in

14

damages. *See* Dkt. No. 88-1 at 13. Plaintiffs cite to a review of securities litigation cases, which indicates that this percentage is consistent with the typical recovery in securities class action settlements. *See id.* (citing Laarni T. Bulan et al, *Securities Class Action Settlements: 2019 Review and Analysis* (Cornerstone Research))[2]; *cf. In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 800 (9th Cir. 2020) (Lee, J., concurring) (recognizing that in 2018 "the median cost of a securities class-action settlement was $13 million"). Moreover, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982).

Plaintiffs have also explained the significant risks that they would face in continuing to litigate this case. This is a complex case that would require complicated assessments of PG&E's wildfire prevention efforts and safety protocols. The parties would rely heavily on expert testimony, which could be susceptible to different interpretations. *See id.* at 10. Plaintiffs also appear to acknowledge improved results during the 2019 California wildfire season following PG&E's de-energization efforts, when no deaths were conclusively linked to PG&E's new safety protocols. *See id.* Plaintiffs further acknowledge the difficulty in establishing damages in this case given the volatility of PG&E's stock following the prior years' wildfires and PG&E's bankruptcy. *See id.* at 10–11. The Court finds that, given these risks, the settlement amount also weighs in favor of granting preliminary approval.

### iv. Fairness of Supplemental Agreement

The Court must also review the fairness of the parties' confidential supplemental agreement. *See* Dkt. No. 105. The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018). And having reviewed the supplemental agreement provisionally filed under seal, the Court concludes that the termination provision is fair and reasonable.

---

[2] Available at https://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2019-Review-and-Analysis.

### v. Obvious Deficiencies

The Court also considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

*   *   *

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval. The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

## IV. PROPOSED PLAN OF ALLOCATION

The Court also must preliminarily approve the Plan of Allocation. Such a distribution plan is governed by the same legal standards that apply to the approval of a settlement: the plan must be fair, reasonable, and adequate. *See, e.g.*, *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). "A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Vinh Nguyen v. Radient Pharms. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) (quotation omitted). "[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.* at *5.

The Plan of Allocation here uses a "recognized loss" value that tailors the recovery of each class member to the timing of any sales or purchases of PG&E common stock relative to periods of alleged artificial inflation and corrective disclosures, as well as the number of shares at issue in each class member's claim. *See* SA at Sec. A, ¶ 39; *id.* at Sec. D, ¶¶ 1–2; *see also* Dkt. No. 98 at 38–39 ("Proposed Plan of Allocation"). The Settlement Fund will thus be distributed on a *pro rata* basis according to each class member's recognized loss. The Court preliminarily approves the allocation plan.

## V. PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be sent to all class members "whose names and addresses may be ascertained through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). "If the names and addresses of class members cannot be determined by reasonable efforts, notice by publication is sufficient to satisfy the requirements of the due process clause and Rule 23." *Jermyn v. Best Buy Stores, L.P.*, No. 08 CIV. 00214 CM, 2010 WL 5187746, at *3 (S.D.N.Y. Dec. 6, 2010) (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317–18 (1950)). District courts have "broad power and discretion vested in them by [Rule 23]" in determining the contours of appropriate class notice. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979). Direct notice is inappropriate when it is overly broad. *Yeoman v. Ikea U.S. W., Inc.*, No. 11CV701 WQH BGS, 2013 WL 5944245, at *5–6 (S.D. Cal. Nov. 5, 2013); *see also Jermyn*, 2010 WL 5187746, at *3.

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

  (i)    the nature of the action;
  (ii)   the definition of the class certified;
  (iii)  the class claims, issues, or defenses;
  (iv)   that a class member may enter an appearance through an attorney if the member so desires;
  (v)    that the court will exclude from the class any member who requests exclusion;
  (vi)   the time and manner for requesting exclusion; and
  (vii)  the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The parties have agreed that a third-party settlement administrator, A.B. Data Ltd., will mail class notice to those members of the class that may be identified through reasonable efforts. The Court understands that the majority of class members are likely beneficial purchasers whose securities were purchased by brokerage firms, banks, institutions, and other third-party nominees in the name of the nominee, on behalf of the beneficial purchaser. *See* Schachter Decl. at ¶¶ 4, 12. Accordingly, A.B. Data will use a proprietary database with names, mailing addresses, and email

17

addresses of approximately 4,000 banks, brokers, and other nominees (the "Nominee List"). *See id.* A.B. Data will then send a Postcard Notice to all persons and entities identified as potential class members by PG&E's stock transfer agent and to all entities on the Nominee List. *See id.* at ¶ 5. Notice to the entities on the Nominee List will include instructions to either provide A.B. Data with the names and addresses of their clients who may be class members or request "bulk" copies of the Postcard Notice so that the Nominee can send the notice directly to its clients who are class members. *See id.* A.B. Data will send the notice to all class members identified by the Nominees. *Id.* at ¶ 6. Addresses will be checked against the United States Postal Service's National Change of Address database to identify address changes and obtain current mailing addresses where available. *See id.*

The parties state that this process is used routinely in securities class actions. *See* Dkt. No. 103 at 5–7. And although they do not have any precise estimates of the proportion of class members who likely will not receive notice from this process, they believe "the vast majority of potential class members do get notice." *See id.* at 5. The parties explain that "[b]rokers – the critical link in the notice chain – know their responsibilities and have developed procedures to notify their clients or provide claims administrators information sufficient to notify them." *Id.* at 6. A.B. Data also notes that in its 14 years' of experience and administration of more than 100 settlements, it has only experienced class members finding outdated notices regarding classes of which they were members and belatedly seeking a share of the settlement "a handful" of times. *Id.* at 6.

A.B. Data will also maintain a case-specific website dedicated to this settlement; publish a summary version of the notice over the *PR Newswire*; and send the Depository Trust Company ("DTC") a Notice and Claim Form for the DTC to publish on its Legal Notice System ("LENS"). *Id.* at ¶¶ 8–9. The Court finds that the proposed notice process is "reasonably calculated, under all the circumstances, to apprise all class members of the proposed settlement." *Roes*, 944 F.3d at 1045 (quotation omitted).

As to the substance of the notice, the parties have attached a copy of their proposed class notice. It includes the Postcard Notice that will be mailed to the class members, Dkt. No. 81-5,

18

1    Ex. A-4; the Summary Notice that will be published over the *PR Newswire*, Dkt. No. 81-3, Ex. A-
2    2; and the full Notice that will be available on the case website, Dkt. No. 81-2, Ex. A-1.  The
3    Postcard Notice provides a short description of the Settlement and the key dates (*i.e.*, for opting
4    out, objecting, and the final fairness hearing), and directs the recipient to the settlement website to
5    access and download the Notice as well as the Claim Form.  The Notice on the website is detailed
6    and includes (1) the nature, history, and status of the litigation; (2) the definition of the proposed
7    settlement class and who is excluded; (3) the reasons the parties have proposed the settlement;
8    (4) the amount of the settlement fund; (5) the estimated average distribution per damaged share;
9    (6) the settlement class's claims; (7) the parties' disagreement over damages and liability; and (8)
10   the plan for allocating the settlement proceeds to the class.  *See id.*

11           The notices also inform class members that Class Counsel will file a motion with the Court
12   for attorneys' fees, as well as reimbursement of litigation costs and expenses advanced by Class
13   Counsel.  *Id.*  It also provides that Co-Lead Plaintiffs may request up to $5,000 for their services
14   as class representative.  *Id.*  To enable class members to object to the motion for attorneys' fees
15   and the motion for incentive awards, Class Counsel shall include language in the summary table
16   on page 2 of the full Notice:  (1)  including the deadline for filing the attorneys' fees motion and
17   request for Plaintiffs' incentive award; and (2) clarifying that the objection deadline includes any
18   objections to these motions.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993–
19   94 (9th Cir. 2010) (holding that under Rule 23(h), class members must be given a full and fair
20   opportunity to examine and object to attorneys' fees motion).  The Court therefore finds that with
21   these changes, the content of the proposed notice provides sufficient information about the case
22   and thus conforms with due process requirements.  *See Hyundai II*, 926 F.3d at 567 ("Notice is
23   satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those
24   with adverse viewpoints to investigate and to come forward and be heard." (quotation omitted)).

25   **VI.    CONCLUSION**
26           For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval.
27   The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event
28   listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative Class Members | |
| Filing deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for Class Members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment, at least 45 days after the filing of the motion for attorneys' fees and incentive payments | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan with the edits identified above. This terminates Dkt. No. 98.

**IT IS SO ORDERED.**

Dated: 4/20/2021

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge

20