UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER VATAJ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM D. JOHNSON, JOHN R. SIMON, GEISHA WILLIAMS, and JASON P. WELLS,<br><br>Defendants. | Case No. 4:19-cv-06996-HSG<br><br>**NOTICE OF MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Hon. Haywood S. Gilliam Jr.<br><br><u>CLASS ACTION</u> |

PLEASE TAKE NOTICE that at 2:00 p.m. on September 16, 2021, or as soon thereafter as counsel may be heard, before the Honorable Haywood S. Gilliam Jr., in the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 2 – 4th Floor 1301 Clay Street, Oakland, CA 94612, Lead Plaintiffs Ironworkers Local 580 Joint Funds, Ironworkers Locals 40, 361 & 417 Union Security Funds and Robert Allustiarti ("Class Plaintiffs") hereby will move for an order awarding attorneys' fees, authorizing reimbursement of expenses for Class Counsel, and reimbursement to Class Plaintiffs for their time and expense in prosecuting claims.

The grounds for this motion are that the requested award of fees and expenses to Class Counsel are warranted under the fee-setting and expense reimbursement criteria applicable to common fund and Private Securities Litigation Reform Act ("PSLRA") cases, and are consistent with the retainer agreements between Class Counsel and Class Plaintiffs.

This motion is supported by the accompanying Memorandum of Points and Authorities; the Joint Declaration of Louis C. Ludwig and Jonathan Horne in Support of Motion for an Order Granting Final Approval of Class Action Settlement; and the exhibits filed therewith.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should award attorneys' fees of 25% fees of the Gross Settlement Fund.

2.       Whether the Court should award expenses of $82,046.47.

3.      Whether Court should award each Plaintiff $5,000 for their efforts on behalf of the Class.

**TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................................................1

II.     SPECIFIC EFFORTS OF CLASS COUNSEL.................................................................2

III.    THE COURT SHOULD USE THE PERCENTAGE   METHOD TO FIX
        ATTORNEYS' FEES ..........................................................................................................3

    A.    The Common Fund Doctrine ......................................................................................3

    B.    The Percentage-of-Fund Approach.............................................................................4

    C.    The Benchmark Award In This Circuit Is 25% .........................................................5

IV.   A BENCHMARK AWARD OF 25% OF THE SETTLEMENT FUND IS
        REASONABLE IN THIS CASE .......................................................................................6

    A.    Class Counsel Achieved An Excellent Result For The Class ....................................6

    B.    The Risks Of The Litigation ......................................................................................7

    C.    The Skill Required And The Quality And Efficiency Of The Work..........................8

    D.    The Contingent Nature Of The Case And The Financial Burden Carried By
          Lead Counsel .............................................................................................................9

    E.    The Customary Fee....................................................................................................10

    F.    A Lodestar Cross-Check Shows the Fee Request Is Reasonable.............................11

    G.    The Reaction Of The Class Supports The Requested Award....................................12

V.     CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY
        TO ACHIEVE THE BENEFIT OBTAINED.................................................................12

VI.    THE AWARD TO CLASS PLAINTIFFS SHOULD BE APPROVED.........................14

VII. CONCLUSION ..................................................................................................................15

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arenson v. Bd. of Trade of City of Chicago*,
    372 F. Supp. 1349 (N.D. Ill. 1974) ........................................................................................8

*Blum v. Stenson*,
    465 U.S. 886 (1984) ......................................................................................................4, 9

*Buccellato v. AT & T Operations, Inc.*,
    No. C10-00463-LHK, 2011 WL 4526673 (N.D. Cal. June 30, 2011)...................................14

*Central Railroad. & Banking Co. of Ga. v. Pettus,*
    113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885) ...................................................................4

*Destefano v. Zynga, Inc.*,
    No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196 (N.D. Cal. Feb. 11, 2016)............13, 14

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D. 326 (N.D. Cal. 2014) .........................................................................................11

*Eltman v. Grandma Lee's Inc.*,
    1986 WL 53400 (E.D.N.Y. May 28, 1986)..............................................................................8

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
    307 F.3d 997 (9th Cir. 2002).................................................................................................10

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994).....................................................................................................13

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ...............................................................................................................6

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................................................4, 5

*In re Am. Apparel S'holder Litig.*,
    No. CV 10-06352 MMM (JCGx), 2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014)
    .............................................................................................................................................10

*In re Ashanti Goldfields Sec. Litig.*,
    No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431 (E.D.N.Y. Nov. 15, 2005)...............13

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173.............................................................................................................................5

*In re Dairy Farmers of Am., Inc.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) .......................................................................................6

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977).......................................................................................8

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*,
4 F. Supp. 3d 94 (D.D.C. 2013) ............................................................................................14

*In re Galena Biopharma, Inc. Sec. Litig.*,
2016 U.S. Dist. LEXIS 82693 (D. Or. June 24, 2016)........................................................14

*In re Heritage Bond Litig.*,
No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627 (C.D. Cal June 10, 2005) .........12

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................................................13, 14

*In re King Res. Co. Sec. Litig.*,
420 F. Supp. 610 (D. Colo. 1976) .......................................................................................6, 8

*In re M.D.C. Holdings Sec. Litig.*,
1990 WL 454747 (S.D. Cal. 1990) ......................................................................................10

*In re Mercury Interactive Corp. Sec. Litig.*,
No. 5:05-CV-03395-JF, 2011 WL 826797 (N.D. Cal. Mar. 3, 2011)....................................11

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal 2008) .............................................................................8, 11

*In re Puda Coal Inc. Sec. Litig.*,
No. 11-CV-2598 (S.D.N.Y.) ................................................................................................13

*In re Select Comfort Corp. Secs. Litig.*,
No. 99-884 (D. Minn. Feb. 28, 2003) ....................................................................................6

*In re SilverCorp Metlas, Inc.*,
12-cv-9456 (Feb. 13, 2015 S.D.N.Y.)....................................................................................6

*In Re Snap Inc. Sec. Litig.*,
No. 2:17-CV-03679-SVW, 2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ..............................5

iv

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*,
　724 F. Supp. 160 (S.D.N.Y. 1989) ...................................................................................... 5

*In re UnitedHealth Group Inc. Shareholder Deriv. Litig.*,
　631 F.3d 913 (8th Cir. 2011) .......................................................................................... 14

*In re Veritas Software Corp. Sec. Litig.*,
　396 F. App'x 815 (3d Cir. 2010) ..................................................................................... 14

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
　19 F.3d 1291 (9th Cir. 1994) ................................................................................. 4, 6, 7, 9

*In re Wireless Facilities, Inc. Sec. Litig. II*,
　No. 07cv482 NLS, 2008 U.S. Dist. LEXIS 128674 (S.D. Cal. Dec. 19, 2008) ............... 10, 12

*Kirchoff v. Flynn*,
　786 F.2d 320 (7th Cir. 1986) ...................................................................................... 5, 10

*Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*,
　540 F.2d 102 (3d Cir. 1976) ............................................................................................. 7

*Matter of Cont'l Illinois Sec. Litig.*,
　962 F.2d 566 (7th Cir. 1992) ............................................................................................ 4

*McShan v. Hotel Valencia Corp.*,
　No. 19-CV-03316-LHK, 2021 WL 1338948 (N.D. Cal. Apr. 9, 2021) ................................ 5

*Morris v. Lifescan, Inc.*,
　54 F. App'x 663 (9th Cir. 2003) ...................................................................................... 6

*Paul, Johnson, Alston & Hunt v. Graulty*,
　886 F.2d 268 (9th Cir. 1989) ................................................................................. 3, 4, 5, 6

*Ratner v. Bennett*,
　1996 WL 243645 (E.D. Pa. May 8, 1996) ......................................................................... 6

*Schulte v. Fifth Third Bank*,
　2011 WL 3269340 (N.D. Ill. July 29, 2011) ..................................................................... 6

*Six Mexican Workers v. Arizona Citrus Growers*,
　904 F.2d 1301 (9th Cir. 1990) ......................................................................................... 4

*Steiner v. Am. Broad. Co.*,
　248 F. App'x 780 (9th Cir. 2007) ................................................................................... 11

v

*Steinfeld v. Discover Fin. Servs.*,
No. C 12-01118 JSW, 2014 WL1309692 (N.D. Cal. Mar. 31, 2014)......................................11

*Todd v. STAAR Surgical Co.*,
No. CV 14-5263 MWF (GJSx), LEXIS 176183 (C.D. Cal. Oct. 24, 2017) ...........................10

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993)........................................................................................................4

*Van Wingerden v. Cadiz, Inc.*,
No. LA CV15-03080 JAK (JEMx), 2017 U.S. Dist. LEXIS 18800 (C.D. Cal. Feb. 8, 2017)10

*Vincent v. Hughes Air W., Inc.*,
557 F.2d 759 (9th Cir. 1977)......................................................................................................3

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)...........................................................................................10, 11

*Waters v. Int'l Precious Metals Corp.*,
190 F.3d 1291 (11th Cir. 1999)..................................................................................................6

### Statutes

15 U.S.C. § 78u-4(a)(4) ...........................................................................................................14

15 U.S.C. § 78u-4(a)(6) .............................................................................................................5

### Rules

Federal Rule of Civil Procedure 23(e) ........................................................................................1

### Other Authorities

Richard Posner, *Economic Analysis of Law*, §21.9 (3d ed.1986) ..................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

Class Plaintiffs, through their undersigned counsel, submit this memorandum of law in support of their Motion, pursuant to Federal Rule of Civil Procedure 23(e), for an Order: (1) awarding attorneys' fees of 25% of the Gross Settlement Fund, or $2,500,000; (2) awarding reimbursement of $82,046.47 in litigation expenses; and (3) awarding Class Plaintiffs $5,000 each.

## I.    INTRODUCTION[1]

After careful and zealous litigation, Lead Counsel have agreed with Defendants to settle this action for $10 million in cash. For their efforts in securing the Settlement, Lead Counsel requests an award of 25% of the Settlement, the benchmark in the Ninth Circuit.

The Settlement recovers roughly the median percentage of investor losses recovered in securities class action cases of this size. It is an excellent result, but particularly so when viewed in light of the considerable risks of summary judgment, trial, and appeal. This recovery results from hard-fought litigation as well as negotiations that took more than six months. The Parties did not reach an agreement until after they had fully briefed a motion to dismiss, and after Plaintiffs had participated in a mediation session.

The reaction of the Class supports the requested fees and expenses. The Claims Administrator mailed over 218,500 Postcard Notice forms to Class Members. *See* Declaration of Eric A. Nordskog, Exhibit ("Exh.") 1 to Joint Declaration of Jonathan Horne and Louis Ludwig, filed herewith. The Postcard Notice advised Class Members that Class Counsel intended to apply to the Court for an award of attorneys' fees representing up to 25% of the Gross Settlement Fund and an award to Class Plaintiffs not to exceed $5,000 each, and that Class Counsel would seek reimbursement of their out-of-pocket expenses not to exceed

---

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement (the "Stipulation").

$100,000. *See* Nordskog Decl., Ex. A. The deadline to file objections and to request exclusion to the Settlement is July 19, 2021. To date, Plaintiffs and the Claims Administrator have not received any objection or requests for exclusion.

The fairness and reasonableness is confirmed when cross-checked with Class Counsel's lodestar. Class Counsel spent a total of approximately 1180 hours of professional time having a market value of approximately $914,472.90, resulting in a lodestar multiplier of approximately 2.73.

The Settlement could not have been achieved but for Class Plaintiffs' and Class Counsel's persistent and extensive litigation of this matter.

For the reasons set forth more fully below, Lead Counsel respectfully submit that such attorneys' fees and expenses are fair and reasonable under applicable legal standards and in light of the contingency risk undertaken, and should be awarded by the Court.

## II.    SPECIFIC EFFORTS OF CLASS COUNSEL

This brief description of the Action reveals not only the complexities of the case, but also the host of factual and legal issues that Class Counsel had to convincingly address in order to achieve the Settlement. As explained in the Joint Declaration, in addition to the efforts previously identified to the Court, to achieve the Settlement with Defendants, Class Counsel, among other things:

- Conducted an investigation, including interviews with former employees;
- Drafted and filed the operative Complaint;
- Briefed a motion to dismiss;
- Prepared for and held a mediation with the assistance of a pre-eminent third-party neutral, the Hon. Layn R. Phillips (Ret.);
- Engaged in further mediation efforts with Judge Phillips's assistance;
- Participated in continued negotiation efforts over the months following the mediation to achieve and finalize the Settlement and document it in the Stipulation;
- Obtained a $10 million settlement following arm's-length negotiations with Defendants;
- Navigated PG&E's bankruptcy proceedings to achieve a substantial settlement for the Class;

- Consulted with experts regarding the plan of allocation and support for preliminary approval of the Settlement; and

- Prepared the documents required for preliminary and final approval of the Settlement.

Lead Counsel's effort to successfully resolve the remaining claims against Defendants has been without compensation of any kind. Payment of attorneys' fees and reimbursement of expenses were, and always have been, wholly contingent upon the result achieved.  As compensation for these efforts, Class Counsel requests that this Court award attorneys' fees of 25% of the Gross Settlement Fund, or $2.5 million, plus reimbursement of $82,046.47 in out-of-pocket litigation expenses. Lead Counsel's 25% fee request is the benchmark in this Circuit.

Finally, the Court should consider the Class Members' reaction to the award sought. More than 218,500 Court-approved Notices were mailed to potential and existent members of the Class. *See* Nordskog Decl., ¶7.  The Notice advised Class Members of the terms of this Settlement, that Class Counsel could apply for a fee of up to 25% of the Gross Settlement Fund, that Class Counsel could seek reimbursement of litigation expenses of up to $100,000 million, and that Class Plaintiffs could seek an award not to exceed $5,000 each.  *Id.*, Ex. A. The Notice also advised Class Members' of their right to object and/or opt out.  *Id*.  The deadline to object or request exclusion is impending and to date, there have been no objections to the fee and expense requests, or any other part of the Settlement, and there have been no requests for exclusion.  *See* Nordskog Decl., ¶¶ 13-14.   The reaction of the Settlement Class further demonstrates that the requested award of attorneys' fees and expenses and awards to Plaintiffs are fair and reasonable.

III.    **THE COURT SHOULD USE THE PERCENTAGE  METHOD TO FIX ATTORNEYS' FEES**

A.    **The Common Fund Doctrine**

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  In *Paul, Johnson, Alston & Hunt v. Graulty*,

3

886 F.2d 268, 271 (9th Cir. 1989) ("*Paul, Johnson*"), the Ninth Circuit explained the equitable principle underlying such fee awards:

> Since the Supreme Court's 1885 decision in *Central Railroad. & Banking Co. of Ga. v. Pettus,* 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit. [...] The amount of such a reward is that which is deemed "reasonable" under the circumstances.

(Emphasis in original; citations omitted). The purpose of this "common fund" doctrine is to avoid unjust enrichment, requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

### B.    The Percentage-of-Fund Approach

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the common fund doctrine a "reasonable" fee may be based "on a percentage of the fund bestowed on the class." In *Paul, Johnson*, 886 F.2d 268, *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990), and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993), the Ninth Circuit expressly approved the use of the percentage-of-recovery method in common fund cases.

Since *Paul, Johnson* and its progeny, district courts in this Circuit have come to almost uniformly follow the percentage method in awarding fees in representative actions. There are compelling reasons why so many courts have opted for the percentage approach in common fund cases. First, it is consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery.[2] Second, it more

---

[2]  *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client."); *In re Activision Sec. Litig.*, 723 F. Supp.

closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time required under the circumstances.[3] Third, use of the percentage-of-recovery method decreases the burden imposed on the court (by avoiding a detailed and time-consuming lodestar analysis), while assuring that the beneficiaries do not experience unnecessary delay in receiving their share of the settlement. *See In re Activision Secs. Litig.*, 723 F. Supp. at 1378-79.[4]

Indeed, the plain text of the PSLRA states that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class. *See* 15 U.S.C. § 78u-4(a)(6). *See In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n. 7 (3d Cir. 2005) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

C.    The Benchmark Award In This Circuit Is 25%

In *Paul, Johnson*, 886 F.2d at 273, the Ninth Circuit originally established 25% of the fund recovered as the "benchmark" award to be adjusted upward or downward depending on the circumstances of the particular case. "[I]t is well-established that 25% of a common fund is a presumptively reasonable amount of attorneys' fees." *McShan v. Hotel Valencia Corp.*, No. 19-CV-03316-LHK, 2021 WL 1338948, at *2 (N.D. Cal. Apr. 9, 2021). "The benchmark is 'presumptively reasonable,' *[citation]* and it should only be adjusted upward or downward for

---

1373 (N.D. Cal. 1989) (noting that in the marketplace, attorneys and their clients routinely negotiate 25% to 40% percentage fees).

[3]   *See Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986) ("The lawyer gains only to the extent his client gains[,] ....ensur[ing] a reasonable proportion between the recovery and the fees assessed to the defendant . . . . reward[ing] exceptional success . . . penaliz[ing] failure . . . [and] automatically handl[ing] compensation for the uncertainty of litigation.").

[4]   *See also In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989) ("straight contingent fee awards [are] bereft of largely judgmental and time-wasting computations of lodestars and multipliers").

"unusual circumstances." *In Re Snap Inc. Sec. Litig.*, No. 2:17-CV-03679-SVW, 2021 WL 667590, at *3 (C.D. Cal. Feb. 18, 2021) (second quotation mark quoting *Paul, Johnson*, 886 F.2d at 272.[5]

The guiding principle remains that a fee award should be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296 (citation omitted).  The attorneys' fee requested here is in line with the Ninth Circuit benchmark, and is well within the range of percentages courts in this Circuit have awarded in similar securities class action settlements.

**IV.    A BENCHMARK AWARD OF 25% OF THE SETTLEMENT FUND IS REASONABLE IN THIS CASE**

**A.    Class Counsel Achieved An Excellent Result For The Class**

In this case, Plaintiffs only seek to be awarded the benchmark 25% fee.  Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained"); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (district court, granting a 33% fee, noted that class counsel achieved exceptional results in a risky and complicated class action); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("[T]he amount of recovery, and end result achieved are of primary importance,

---

[5] Courts in other jurisdictions also routinely award fees of 25% or more in similarly sized settlements. *E.g., In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 842 (N.D. Ill. 2015)(awarding 33-1/3% of $46 million settlement fund); *In re SilverCorp Metals, Inc., Securities Litigation*, 12-cv-9456 (Feb. 13, 2015 S.D.N.Y.)(awarding 25% of a $14 million settlement); *Schulte v. Fifth Third Bank*, 2011 WL 3269340, at *31 (N.D. Ill. July 29, 2011) ("A number of fee awards in common-fund cases from within the Seventh Circuit show that an award of 33-1/3% of the settlement fund is within the reasonable range"; approving 33.3% of $9.5 million); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) (one-third award of $40 million); *Ratner v. Bennett*, 1996 WL 243645 (E.D. Pa. May 8, 1996) (35% award in securities action of $400,000); *In re Select Comfort Corp. Secs. Litig.*, No. 99-884 (D. Minn. Feb. 28, 2003) (awarding 33.3% of the $ 5,750,000 settlement).

for these are the true benefit to the client"). The payment of $10 million in cash to the Class provides an excellent recovery under the circumstances.

Class Plaintiffs' preliminary approval filings discussed Plaintiffs' estimation, after consulting with experts, that the maximum aggregate Class damages if the Class prevailed at trial would be approximately $468 million. But as more fully set out in Plaintiffs' Memorandum of Points and Authorities in Support of Final Approval, and below, Plaintiffs face acute risks that make anything like such a recovery vanishingly unlikely and it would in any case likely take a decade, millions of dollars in expenses, and tens of millions of dollars in attorneys' fees, to recover.

This settlement compares favorably with the median securities class action settlement for 2019. According to Cornerstone Research, a defendant-oriented economic consultancy, the median securities class action settlement during that period for securities class actions with similar damages was approximately 1% of estimated damages.[6] The similar recovery here of damages is an outstanding result for the Class, and justifies at least a benchmark award of 25%.

**B.    The Risks Of The Litigation**

Numerous cases have recognized that the risks of litigation are important factors in determining a fee award. *See, e.g., WPPSS*, 19 F.3d at 1299-1300; *Lindy Bros. Builders of Philadelphia v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). Here, Class Plaintiffs faced significant risks as to both liability and damages. This case remains difficult, expensive, and protracted, both for the reasons set out in the Court's Preliminary Approval Order and the remaining reasons set out in Plaintiffs' Memorandum of Law in Support of their motion therefor. Were the Court to reject the Settlement, Plaintiffs would still face the risk that the Court could throw out the case on a motion to dismiss or at

---

[6] *See* http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-Review.pdf, pp. 7.

summary judgment or by granting a motion to exclude a key expert, or that a jury might rule against them.

Should they survive Defendants' motion to dismiss, Plaintiffs would still have to reconstruct complex and constantly evolving preparations for de-energization that achieved some modicum of success to show that it was not prepared to achieve what Defendants claimed it could do. Plaintiffs would still have to drudge through millions of documents to show Defendants knew, or were reckless in not knowing, that the de-energization program could not achieve what they claimed it could. Plaintiffs would still risk losing nearly their entire case based on an arcane financial economic issue forcing them into an aggressive position. Should they succeed at trial, Settlement Class would still have to wait ten years and pay millions of dollars of litigation costs to see a single cent. Given the various risks in this Action and the strengths and weaknesses of the claims asserted against Defendants, the $10 million Settlement secured is highly favorable and in the best interests of the Class. *See* Memorandum in Support of Final Approval.

### C. The Skill Required And The Quality And Efficiency Of The Work

The "prosecution and management of a complex national class action requires unique legal skills and abilities" – particularly in securities class actions. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal 2008). Here, the quality of Class Counsel's work on this case is reflected in the excellent result obtained. The standing and prior experience of Class Counsel are relevant in determining fair compensation. *See, e.g., Eltman v. Grandma Lee's Inc.*, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986). The Joint Declaration includes a description of the background and experience of Class Counsel. *See* Exs. 2 & 3 to Joint Decl. As that submission demonstrates, Class Counsel has extensive and significant experience in the highly specialized field of securities class action litigation.

The quality of opposing counsel is also important in evaluating the quality of the work done by Class Counsel. *See, e.g., In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303,

1337 (C.D. Cal. 1977); *King Res.*, 420 F. Supp. at 634; *Arenson v. Bd. of Trade of City of Chicago*, 372 F. Supp. 1349, 1354 (N.D. Ill. 1974). Plaintiffs were opposed in this litigation by the nationally respected firm of McDermott Will & Emery LLP, and its partner Steven Scholes, named Lawyer of the Year by *Best Lawyers of America* in 2020, which mounted a skillful and aggressive defense.

At every stage of the proceedings, Lead Counsel had to perform with a high level of skill, efficiency, and professionalism. In the face of strong opposition from a highly respected securities defense firm, Lead Counsel obtained an excellent settlement for the Class. Such quality, efficiency, and dedication should be rewarded.

### D.  The Contingent Nature Of The Case And The Financial Burden Carried By Lead Counsel

The Ninth Circuit recognizes that the determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.

*See* Richard Posner, *Economic Analysis of Law*, §21.9, at 534-35 (3d ed.1986).  Contingent fees in risky cases that may exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Lead Counsel has received no compensation over the course of the litigation against Defendants and has incurred significant expenses in litigating for the benefit of the Class. Any fee award or expense reimbursement to Class Counsel has always been at risk and completely contingent on the result achieved and on this Court's exercise of its discretion in making any award.

**E.   The Customary Fee**

If this were not a class action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *See, e.g., Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *7 (S.D. Cal. 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery."); *Kirchoff*, 786 F.2d at 323 (40% contractual award if case had gone to trial). Thus, as the customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is even greater than the percentage-of-recovery fee requested in this case, Lead Counsel's request is reasonable.

Lead Counsel's efforts at obtaining a recovery from Defendants were performed and the result was achieved on a wholly contingent basis, despite significant risk and in the face of determined opposition. Under these circumstances, Lead Counsel is justly entitled to the award of a reasonable percentage fee based on the benefit conferred and the common fund obtained. The fee requested is within the range of fees awarded by the courts in the Ninth Circuit in cases with similar recoveries. *See, e.g., Todd v. STAAR Surgical Co.*, No. CV 14-5263 MWF (GJSx), 2017 U.S. Dist. LEXIS 176183, at *14 (C.D. Cal. Oct. 24, 2017) (granting request for 25% fee where settlement fund totaled $7 million); *Van Wingerden v. Cadiz, Inc.*, No. LA CV15-03080 JAK (JEMx), 2017 U.S. Dist. LEXIS 18800, at *36 (C.D. Cal. Feb. 8, 2017) (approving 25% fee for $3 million settlement); *In re Am. Apparel S'holder Litig.*, No. CV 10-06352 MMM (JCGx), 2014 U.S. Dist. LEXIS 184548, at *88 (C.D. Cal. July 28, 2014) (awarding 25% fee in $4.8 million settlement); *In re Wireless Facilities, Inc. Sec. Litig. II.*, No. 07cv482 NLS, 2008 U.S. Dist. LEXIS 128674, at *24 (S.D. Cal. Dec. 19, 2008) (approving 25% fee where case settled for $4.5 million).

Under all of the circumstances present here, a 25% fee plus expenses is fair and reasonable.

### F.        A Lodestar Cross-Check Shows the Fee Request Is Reasonable

Courts often compare an attorney's lodestar with a fee request made under the percentage of the fund method as a "cross-check" on the reasonableness of the requested fee. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050. In securities class actions it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.[7]

A lodestar cross-check confirms that the fee requested by Counsel, which represents a multiplier of approximately 2.73 is fair and reasonable. Additionally, Lead Counsel's lodestar does not include time and effort that they will continue to devote to the case by, for example, directing the claims administration process and final distribution. Accordingly, the 2.73 multiplier in this case is reasonable when compared to both the 3.65 multiplier approved in *Vizcaino* and the 3.28 average awarded multipliers in the many cases discussed in *Vizcaino*.

[7]   *See, e.g., Vizcaino,* 290 F.3d at 1051-52 (approving a fee representing a 3.65 multiple of lodestar, and listing twenty-three shareholder settlements in which the average multiplier was 3.28); *In re Mercury Interactive Corp. Sec. Litig.*, No. 5:05-CV-03395-JF, 2011 WL 826797, at *2 (N.D. Cal. Mar. 3, 2011) (lodestar cross-check multiplier of 3.08 "is within the acceptable range"); *OmniVision*, 559 F. Supp. 2d at 1048 ("[C]ourts have approved multipliers ranging between 1 and 4."); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, at 783 (9th Cir. 2007) (upholding 25% fee award yielding multiplier of 6.85, finding that it "falls well within the range of multipliers that courts have allowed"); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 WL1309692, at *2-3 (N.D. Cal. Mar. 31, 2014) (finding a 3.5 multiplier reasonable); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014) (approving attorneys' fees that resulted in lodestar multiplier of 2.83).

Plaintiffs' Motion For Attorneys' Fees and Expenses 4:19-cv-06996-HSG

**G.** **The Reaction Of The Class Supports The Requested Award**

Over 218,500 copies of the Court-approved Notice were mailed to Class Members. Nordskog Decl., ¶7.  The Notice was also published and was made available to the public on the Claims Administrator's website. *Id.*, ¶10.  Class Members were informed in the Notice that Class Counsel would apply for attorneys' fees of up to 25% of the Settlement Fund and were advised of their right to object to Class Counsel's fee request.  *Id.* Ex. A.

To date, there have been only no requests for exclusion and no objections to the fee request.  *See id.* ¶12.  Courts have recognized that "[t]he presence or absence of objections from the class is also a factor in determining the proper fee award." *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCx), 2005 U.S. Dist. LEXIS 13627, at *48-50 (C.D. Cal. June 10, 2005) ("conclud[ing] that the lack of significant objections to the requested fees justifies an award of one-third of the Settlement Fund[,] particularly where the number of objections to the fee was "remarkably small given the wide dissemination of notice."); *see also In re Wireless Facilities*, 2008 U.S. Dist. LEXIS 128674, at *23 ("The lack of objections from potential claimants favors awarding Lead Counsel the requested amount of attorneys' fees.").

Settlement Class Members' objections and requests for exclusion are due on July 19, 2021. Lead Counsel will address any objections in their reply memorandum of points and authorities.

**V.** **CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED**

Lead Counsel's expenses are reasonable, consistent with the out-of-pocket expenses that clients typically pay in complex litigation of this type, and were necessarily incurred to achieve this $10 million recovery for the Class.  Lead Counsel has incurred litigation expenses of $82,046.47, for which they have not been reimbursed to date. Joint Decl. Exs. 2 & 3.

The $82,046.47 of expenses requested to be reimbursed are detailed in the Joint Declaration of Class Counsel. *See* Joint Decl. Exs. 2 & 3. The amount requested is substantially less than that identified in the Notice, which apprised the Class Members that

12

Class Counsel would seek expenses in an amount not to exceed $100,000 million.  To date, no Class Member has objected to that request.

These expenses should be reimbursed.  Consistent with other jurisdictions, "courts throughout the Ninth Circuit regularly award  litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation." *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 U.S. Dist. LEXIS 17196, at *73 (N.D. Cal. Feb. 11, 2016); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (same). Class Counsel has pursued this litigation knowing that its outstanding expenses could only be reimbursed (without interest) if the Class won at trial or obtained a settlement. Class Counsel has had no incentive to incur and did not incur unnecessary expenses.

The expenses for which Class Counsel seek reimbursement were all necessary for the successful prosecution and resolution of the Action on behalf of the Class, and are of the type routinely charged to paying clients.  Therefore, these expenses should be reimbursed out of the common fund.  *Harris*, 24 F.3d at 19; *Immune*, 497 F. Supp. 2d at 1177.  The largest cost—accounting for more than 40% of all litigation expenses—was for experts retained to address significant matters in this litigation.  Dr. Adam Werner of Crowninshield Financial Research LLC provided economic analysis to estimate damages under various scenarios and advise on methods of calculating damages, in particular the risks and benefits of using the year before the Class Period to establish the baseline volatility of PG&E's stock price. Plaintiffs also retained an electric grid expert, Douglas Proctor, to advise on technical aspects of the case. The expenses here are consistent with those reimbursed in other similarly complex securities fraud litigations that have progressed to expert discovery.  *See, e.g., In re Ashanti Goldfields Sec. Litig.*, Civil

13

Action No. CV-00-717 (DGT), 2005 U.S. Dist. LEXIS 28431, at *15-16 (E.D.N.Y. Nov. 15, 2005) (granting reimbursement of $1,377,825.93 in litigation expenses and noting "the largest expense, totaling over $500,000, was for the services of expert witnesses. . . . This is not unusual in securities litigation actions."); *In re Puda Coal Inc. Sec. Litig.*, No. 11-CV-2598, Order dated June 22, 2016 (ECF No. 615) (S.D.N.Y.) (granting reimbursement of $2,089,573.76 in litigation expenses including expert fees); *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 113–14 (D.D.C. 2013) (granting reimbursement of $10,027,188.94 in "expert and consultant fees").

Similarly, mediation fees, court recorder costs, computerized legal research, photocopying, e-discovery and document retrieval and filing costs should be reimbursed. *See Zynga*, 2016 U.S. Dist. LEXIS 17196, at *73; *Immune*, 497 F. Supp. 2d at 1177; *In re UnitedHealth Group Inc. Shareholder Deriv. Litig.*, 631 F.3d 913, 918-19 (8th Cir. 2011).

## VI.    THE AWARD TO CLASS PLAINTIFFS SHOULD BE APPROVED

Class Plaintiffs also request that the Court award them $5,000 each to compensate for the significant additional time each expended in representing the Class.  The PSLRA provides that courts are empowered to approve such awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. § 78u-4(a)(4). Plaintiffs reviewed documents in connection with the Action, communicated with counsel about the Action and helped evaluate settlement proposals.  *See* Joint Decl. Ex. 4.  Courts routinely award lead plaintiffs more than the total requested here. *See, e.g., In re Veritas Software Corp. Sec. Litig.*, 396 F. App'x 815, 816 (3d Cir. 2010) ($15,000 for each lead plaintiff); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 4526673, at *4 (N.D. Cal. June 30, 2011) ($20,000 to lead plaintiff, $5,000 to class representatives); *In re Galena Biopharma, Inc. Sec. Litig.*, 2016 U.S. Dist. LEXIS 82693, at *42 (D. Or. June 24, 2016) ($5,000 to each lead plaintiff).

In short, an award of $5,000 to each Class Plaintiff is warranted.

14

## VII.    CONCLUSION

Securities class actions are complex and laden with risk. Many times class counsel, after expending thousands of hours of time and hundreds of thousands of dollars of expenses, receives no compensation whatsoever.   Here, there was no guarantee that Class Plaintiffs' claims would bear any fruit.   This complex litigation has been extremely hard-fought, with Defendants represented by experienced and equally determined defense counsel. Without any assurance of success, Class Plaintiffs and their counsel pursued these additional claims to an exceptional conclusion. This additional Settlement represents an excellent recovery for behalf of the Class and reflects the skill, dedication, and tenacity of Lead Counsel. The Court should approve Lead Counsel's fee and expense and enter the Order submitted herewith awarding Class Counsel 25% of the Gross Settlement Fund plus reimbursement of $82,046.47 of expenses, and an award of $5,000 each to Class Plaintiffs Ironworkers Local 580 Joint Funds, Ironworkers Locals 40, 361 & 417 Union Security Funds and Robert Allustiarti.

Dated: July 12, 2021                     Respectfully submitted,

**POMERANTZ LLP**

/s/ Louis C. Ludwig
Patrick V. Dahlstrom
Louis C. Ludwig
 (*admitted pro hac vice*)
Jared Schneider
(*admitted pro hac vice*)

Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 229-8811
Email: lcludwig@pomlaw.com
Email: jschneider@pomlaw.com

Jeremy A. Lieberman
(*admitted pro hac vice*)
J. Alexander Hood II
(*admitted pro hac vice*)

15

600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
Email: ahood@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
Email: jpafiti@pomlaw.com


**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Jonathan Horne (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: jhorne@rosenlegal.com

*Co-Counsel for Co-Lead Plaintiffs*

**THE SCHALL LAW FIRM**
Brian Schall
Sherin Mahdavian
Rina Restaino, Esq.
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com
sherin@schallfirm.com
rina@schallfirm.com

*Additional Counsel for Plaintiff Allustiarti*

16