UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER VATAJ, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM D. JOHNSON, JOHN R. SIMON, GEISHA WILLIAMS, and JASON P. WELLS, <br><br> Defendants. | Case No. 4:19-cv-06996-HSG <br><br> **PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Hon. Haywood S. Gilliam Jr. <br><br> <u>CLASS ACTION</u> |

## I.    INTRODUCTION[1]

The Claims Administrator provided Postcard Notices to 226,330 potential Settlement Class Members. Nordskog Decl. ¶5. The Claims Administrator received 24,083 claims. *Id*. at ¶9.

The deadline to seek exclusion or object to the Settlement was August 26, 2021. *Id*. at ¶10. Only two purported Settlement Class Members (0.008% as many as claimants) sought exclusion from the Settlement. *Id*.; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (affirming final approval of settlement, noting "that the overwhelming majority of the class … stayed in the class presents at least some objective positive commentary as to its fairness."), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

One person mailed a letter to the Court which could be construed as an objection to the Notice Plan. Nordskog Decl. ¶12. Other than that, there were no objections. No Settlement Class Members objected to the Settlement, the Plan of Allocation, the award of attorneys' fees and reimbursement of expenses, or the awards to Plaintiffs. *Nat'l Rural Telecomm'cns Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (finally approving settlement, finding "[t]he absence of a single objection to the Proposed Settlement provides further support for final approval of the Proposed Settlement."); *In re Rambus Inc. Derivative Litig.*, No. C 06-3513 JF (HRL), 2009 WL 166689, at *3 (N.D. Cal. Jan. 20, 2009) (finally approving settlement, awarding attorneys' fees, finding absence of objections "raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members").

*Requests for exclusion*

The Claims Administrator received three purported requests for exclusion. Nordskog Decl. ¶10. The Preliminary Approval Order stated that Settlement Class Members seeking exclusion must document their transactions, but none of the purported opt-outs did so. *Id*. Moreover, one of the opt-outs acknowledges that she did not purchase PG&E shares during the Settlement Class Period. *Id*. She is accordingly not a Settlement Class Member. The other two purported opt-outs

---

[1] Unless otherwise noted, all citations are omitted and emphases are added and all terms not defined herein take the meaning provided in the Stipulation.

purchased 13 and 200 PG&E shares during the Settlement Class Period, respectively. *Id*.

*Michael Jesse*

Purported Settlement Class Member Michael Jesse mailed a letter to the Court. Dkt. # 121. In it, Mr. Jesse raises two concerns: (1) he called the Claims Administrator and Plaintiffs' Counsel and could not get through to a representative; and (2) the font on the Postcard Notice is too small. Nordskog Decl. ¶12.

Mr. Jesse's letter does not appear to be an objection to any part of the Settlement. Mr. Jesse did not include any of the information required to object. He raises no systematic issues with the Notice Plan, and instead requests that the Claims Administrator send him the information "in legible and understandable English", which it promptly did by sending him a copy of the Long Notice. Further, Counsel subsequently called Mr. Jesse, who stated that he did not know whether he purchased shares during the Settlement Class Period. Horne Decl. ¶3. Thus, Mr. Jesse does not appear to be "objecting" to the Settlement so much as commenting on his experience with the Claims Administrator, which in his particular case fell short of what the Claims Administrator aims to and usually does provide. Nevertheless, Plaintiffs will treat Mr. Jesse's letter as an objection to the Notice Plan.

The Claims Administrator operates a call center. Nordskog Decl. ¶6. The Claims Administrator's automated answering system allows callers to select the option of speaking with a live representative. *Id*. The Claims Administrator is almost always able to place business hours callers directly to a representative. *Id*. But if there are no representatives available, the Claims Administrator does not place callers on hold. *Id*. Instead, callers are invited to leave a voicemail message. *Id*. A representative then promptly returns the call. *Id*. This system means callers never have to endure long waits while they try to speak to an operator. *Id*.

The Claims Administrator trains each operator on some, but not all, of the cases it administers. *Id*. at ¶7. The Claims Administrator thus created a pool of operators who can answer callers' questions regarding the PG&E settlement. *Id*. But these operators are also trained to respond to questions raised by callers concerning other cases. *Id*. So an unusually high number of calls in other cases in which these operators are trained could make it difficult to reach an operator

trained to answer questions about the PG&E Settlement. *Id*.

In the weeks before July 7, the Claims Administrator delivered notice to large numbers of class members in other cases it administered, as well as to Settlement Class Members here. On the morning of July 7, 2021, the Claims Administrator received an unusually large volume of calls, mostly because of these other cases. *Id*. As a result, operators trained to answer PG&E callers' questions were busy fielding questions in their other cases, and many PG&E callers were unable to speak to an operator. *Id*. Upon being informed of the issue, the Claims Administrator immediately trained about 50% more operators to answer questions about PG&E. *Id*. The Claims Administrator thereby restored callers' ability to speak to a representative by the afternoon of July 7. *Id*. The Claims Administrator then promptly returned calls to all callers who had left voicemail messages. *Id*.

The Claims Administrator is not aware of any other instances in which callers were not able to speak to a representative. Further, since then, the Claims Administrator has continuously monitored the phone queue to ensure that there are always enough operators trained to answer questions about the PG&E Settlement. *Id*.

Plaintiffs' Counsel does not operate a call center and is not equipped to field large numbers of overflow calls from callers who could not get through to the Claims Administrator. Thus, Mr. Jesse could not reach Plaintiffs' Counsel, either.

Thus, the condition Mr. Jesse rightly complains of began on the morning of July 7 and was addressed by that afternoon. *Id*.

The information contained in the Postcard Notice is essential to advise Settlement Class Members what is being proposed and what they can do about it. All the information appears in a model publication notice published by the Federal Judicial Center.[2] Both Notices explain, first, that Settlement Class Members can file a claim, object, or exclude themselves. Whether Settlement Class Members wish to take any of these steps, they must know the terms of the Settlement and other relief the Court may consider. So the first paragraph of the notice sets this information out.

---

[2] https://www.fjc.gov/sites/default/files/2016/ClaAct14.pdf

3

Objectors have the right to present at the Settlement Hearing. So the first paragraph also informs them when and where the Court will hold that hearing.

Settlement Class Members also must know how to file a claim, object, or exclude themselves. So the third paragraph concisely sets out directions.

Finally, some Settlement Class Members will want to know more information. So the second and fourth paragraphs explains how they can obtain it. Because investors have varying levels of comfort with navigating the web, email, telephone, or mail, the Postcard Notice provides various different means of contacting the Claims Administrator. And because Settlement Class Members may have questions only counsel can answer, the Postcard Notice provides information on how to contact Class Counsel.

Thus, none of the information on the Postcard Notice is superfluous. But to convey this information, the Postcard Notice had to be published in 7-point Times New Roman font. To assist readers, the settlement website and the Claims Administrator's number are listed in all-caps, 8-point font at the top of the Postcard Notice.

*The Chan Family and Charles Dixon*

The Chan Family and Charles Dixon filed late claims and mailed letters to the Court asking for their claims to be accepted. Nordskog Decl. ¶¶13-14. The Chan Family and Mr. Dixon's broker, Charles Schwab, did not provide customer names until June 29. *Id*. at ¶15. Because Charles Schwab provided 21,427 names, it took the Claims Administrator until July 9, 2021, to mail the Postcard Notice to all the customers Charles Schwab identified. *Id*. As a result, through normal mailing delays, many Settlement Class Members received notice just before or even after the July 19, 2021 claims filing deadline. The Chan Family and Mr. Dixon were Charles Schwab customers and received late notice.

Several Settlement Class Members contacted the Claims Administrator for clarification. *Id*. at ¶16. The Claims Administrator accurately told Settlement Class Members that approving untimely claims was within the Court's discretion. *Id*. However, at first, the Claims Administrator omitted to tell inquirers that lead counsel in securities class actions almost invariably ask courts to approve untimely claims which do not delay distribution of the settlement and that courts almost

invariably grant lead counsel's request. Lead Counsel is not aware of any cases in which a judge refused to accept such untimely claims.

The Chan Family and Mr. Dixon, understandably fearing their claims would be rejected out of hand for untimeliness that was not their fault, implored the Court to accept their untimely claims. Upon reviewing the Chan Family and Mr. Dixon's letters, Lead Counsel advised the Claims Administrator to clarify their communications to Settlement Class Members to represent: (a) that Lead Counsel would ask the Court to accept late claims so long as they did not delay distribution of the Settlement, and that (b) they should file claims if they wished to be included in the Settlement. Dkts. # 123, 124. Counsel then called both the Chan Family and Mr. Dixon to explain to them that (a) they should file their claims, and (b) while the ultimate decision is the Court's, Counsel believed based on their experience that the claims would likely be approved provided they were otherwise proper. Horne Decl. ¶2.

While the decision will ultimately be the Court's to make when ruling on a motion for distribution, accepting untimely claims like those filed by the Chan Family and Mr. Dixon would not delay distribution of the Settlement Fund to Settlement Class Members. Accordingly, Lead Counsel will ask the Court to approve their claims as well as all otherwise properly documented but untimely claims. And as the Third Circuit has observed in finding a district court abused its discretion in denying an untimely claim:

> More generally, we find it appropriate to consider the effect of Sambolin's inclusion on those whom it might prejudice—namely those members of the settlement class who filed their registrations by the May 15, 1997 deadline. It cannot be maintained that timely registrants are more deserving of remedy, for purposes of equity, than tardy registrants with similar claims, presuming the failure to register on time was indeed blameless. By excluding Sambolin and other similarly situated late registrants from the class, the timely registrants would receive what is essentially a "windfall," comprised of some portion of the recovery that would be owed to the otherwise deserving late registrants.

*In re Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F.3d 315, 324 (3d Cir. 2001).

## II.   CONCLUSION

For the foregoing reasons, the Court should (i) finally approve the Settlement, (ii) finally approve the Plan of Allocation, (iii) finally approve the Notice, (iv) finally certify the Class for

settlement purposes, (v) award attorneys' fees of 25% of the Settlement Fund, or $2.5 million, (vi) award reimbursement of expenses of $82,046.47; and (vii) award each Plaintiff $5,000, or $15,000 in total.[3]

Dated: September 2, 2021                    Respectfully submitted,

                                            **POMERANTZ LLP**

                                            */s/ Louis C. Ludwig*
                                            Patrick V. Dahlstrom
                                            Louis C. Ludwig
                                            (*admitted pro hac vice*)
                                            Jared Schneider
                                            (*admitted pro hac vice*)

                                            Ten South LaSalle Street, Suite 3505
                                            Chicago, Illinois 60603
                                            Telephone: (312) 377-1181
                                            Facsimile: (312) 229-8811
                                            Email: lcludwig@pomlaw.com
                                            Email: jschneider@pomlaw.com

                                            Jeremy A. Lieberman
                                            (*admitted pro hac vice*)
                                            J. Alexander Hood II
                                            (*admitted pro hac vice*)
                                            600 Third Avenue, 20th Floor
                                            New York, NY 10016
                                            Telephone: (212) 661-1100
                                            Facsimile: (212) 661-8665
                                            Email: jalieberman@pomlaw.com
                                            Email: ahood@pomlaw.com

                                            Jennifer Pafiti (SBN 282790)
                                            1100 Glendon Avenue, 15th Floor
                                            Los Angeles, California 90024
                                            Telephone: (310) 405-7190
                                            Email: jpafiti@pomlaw.com

---

[3] Submitted herewith are the declarations of Sean Boyle and Brian J. Sabbagh, who serve as the representatives of Co-Lead Plaintiffs Iron Workers Local 580 Joint Funds and Ironworkers Locals 40, 361 & 417 Union Security Funds, respectively. Previously, Co-Lead Plaintiff Robert Allustiarti submitted a similar declaration.

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Jonathan Horne (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: jhorne@rosenlegal.com

*Co-Counsel for Co-Lead Plaintiffs*

**THE SCHALL LAW FIRM**
Brian Schall
Sherin Mahdavian
Rina Restaino, Esq.
1880 Century Park East, Suite 404
Los Angeles, CA 90067
Telephone: (424) 303-1964
Email: brian@schallfirm.com
sherin@schallfirm.com
rina@schallfirm.com

*Additional Counsel for Plaintiff Allustiarti*