UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER VATAJ, <br><br> Plaintiff, <br><br> v. <br><br> WILLIAM D. JOHNSON, et al., <br><br> Defendants. | Case No. 19-cv-06996-HSG <br><br> **ORDER GRANTING MOTION FOR FINAL APPROVAL AND GRANTING MOTION FOR ATTORNEYS' FEES AND COSTS** <br><br> Re: Dkt. Nos. 116, 118 |

Pending before the Court are Plaintiffs' motions for final approval of class action settlement and for attorneys' fees, costs, and incentive award. Dkt. Nos. 116, 118. The Court held a final fairness hearing on September 16, 2021. For the reasons detailed below, the Court **GRANTS** final approval. The Court also **GRANTS** Plaintiffs' motion for attorneys' fees, costs, and incentive awards.

I. **BACKGROUND**

A. **Factual Background**

Plaintiffs bring this securities class action against Defendants PG&E Corporation and certain of its officers and directors[1] regarding representations that Defendants made about PG&E's safety protocols following PG&E's bankruptcy and in the wake of several California wildfires caused by PG&E equipment. *See generally* Dkt. No. 58 ("FAC"). Plaintiffs seek to represent a class defined as "all persons and entities who purchased or otherwise acquired PG&E securities" on the New York Stock Exchange between December 13, 2018, and October 28, 2019. *See id.* at

---

[1] Although the original complaint was filed against William D. Johnson, John R. Simon, Geisha Williams, Jason P. Wells, and Sumeet Singh, the amended complaint only lists Messrs. Johnson and Sing and Miss Williams.

¶ 327.

Plaintiffs allege that following the devastating California wildfires between 2015 and 2018, PG&E initiated three measures in an effort to reduce the risk of future wildfires: (1) temporary power shutoffs when high winds and low humidity made wildfires particularly likely (what Plaintiffs refer to as "de-energization"); (2) visual inspections of all of its poles located in high fire threat areas; and (3) inspection for and removal of vegetation overhanging or abutting its power lines. *See id.* at ¶¶ 2, 7–9. The complaint further alleges that Defendants, individual officers at PG&E, made materially false and misleading statements regarding the scope of and protection offered by these safety measure. *Id.* at ¶¶ 17, 53–54, 69–142. In particular, Plaintiffs allege that Defendants failed to disclose that: (i) PG&E's new wildfire prevention and safety protocols were inadequate and missed dangerous conditions; and (ii) PG&E was unprepared for the rolling power outages. *See id.* at ¶¶ 10–12, 69–72, 109–10, 127–34, 236–38, 252, 263–64.

According to the complaint, the truth about Defendants' safety measures was revealed after PG&E mishandled rolling power outages in September and October 2019. *See, e.g.*, *id.* at ¶ 2. Plaintiffs contend that PG&E cut power to millions of Californians for extended periods while providing little notice and insufficient information to stakeholders to prepare in advance. *Id.* Plaintiffs explain that PG&E's de-energizations drew intense criticisms from California's elected representatives. *See id.* at ¶¶ 149–153. In addition, the California Public Utilities Commission launched an investigation into the de-energizations. *See id.* at ¶¶ 67, 155–60. As a result, PG&E's stock prices fell. *See, e.g.*, id. at ¶¶ 273–326.

Based on these allegations, Plaintiffs assert causes of action for violations of Sections 10(b) and 20(a) of the Securities and Exchange Act on 1934, and Rule 10b-5, 15 U.S.C. §§ 78j(b), 78b-1, 78t(a). *See id.* at ¶¶ 337–51.

### B. Procedural History

On February 3, 2020, the Court granted the parties' stipulation to appoint (1) Iron Workers Funds and Robert Allustiarti as Co-Lead Plaintiffs and (2) Pomerantz LLP and The Rosen Law Firm, P.A. as co-lead counsel. *See* Dkt. No. 48. Plaintiffs then filed an amended class action complaint on April 17, 2020. *See* FAC. The individual Defendants moved to dismiss the

2

1  amended complaint. *See* Dkt. No. 59. Before briefing was complete, however, the parties

2  mediated this action before the Hon. Layn R. Phillips (ret.) on April 23, 2020. *See* Dkt. No. 88-1

3  at 6. Although the parties did not reach a settlement that day, they continued discussions with the

4  mediator's assistance. *Id.*

5      After the parties exchanged numerous offers and counteroffers, the mediator proposed that

6  the parties settle the claims asserted in this action for $10 million. *Id.* The parties accepted the

7  mediator's proposal, and filed a notice that they had reached a settlement in principle. *See* Dkt.

8  No. 73. The parties then worked to finalize the settlement. Following the hearing on the motion

9  for preliminary approval, and in response to the Court's concerns about the scope of the release,

10  the parties filed a supplemental brief in support of their motion, which included revised language.

11  *See* Dkt. No. 103 at 1–5. With these changes, the Court granted the motion for preliminary

12  approval. *See* Dkt. No. 107.

13      **C.**     **Settlement Agreement**

14      With the assistance of a mediator, the parties entered into a settlement agreement, fully

15  executed on March 9, 2021. Dkt. No. 98 ("SA"). The key terms are as follows:

16      <u>Class Definition</u>: The Settlement Class is defined as:

17
18          All persons and entities who purchased the common stock of PG&E on the New York Stock Exchange between December 13, 2018, and October 28, 2019, both dates inclusive.

19  SA Sec. A, ¶ 47.

20      <u>Settlement Benefits</u>: Defendant agreed to make a $10 million non-reversionary payment.

21  *Id*. Sec. A, ¶¶ 1, 46. The gross Settlement Fund also includes Court-approved attorneys' fees and

22  costs, settlement administration fees, any additional payment to Plaintiffs as class representative,

23  and payments to class members. SA Sec. A, ¶ 34. The cash payments to the class will be based

24  on a "recognized loss formula" for each share of PG&E common stock, which will account for

25  factors including when the PG&E common stock was purchased or otherwise acquired during the

26  class period; the amount of stock acquired; and whether such stock was sold, and if so, the timing

27  and proceeds of the sales. *Id.* at Sec. A, ¶ 39; *id.* at Sec. D, ¶¶ 1–2; *see also* Dkt. No. 98 at 38–39

28  ("Proposed Plan of Allocation"). Each class member must submit a Proof of Claim to the

United States District Court
Northern District of California

settlement administrator to be eligible for a payment from the Settlement Fund. *See* SA at Sec. A, ¶¶ 22, 41; *see also id.* at Sec. D, ¶¶ 3–8; *see also* Dkt. No. 80-4, Ex. A-3 ("Proof of Claim and Release" form).

<u>*Cy Pres* Distribution</u>: Following the final approval hearing, it came to the Court's attention that the parties' proposed *cy pres* recipient, the Investor Justice Clinic at the University of San Francisco School of Law, is currently "on pause" due to lack of funding. The parties therefore propose the Investor Justice and Education Clinic ("IJEC") at the Howard University School of Law in Washington D.C. as an alternate *cy pres* recipient.[2] Dkt. No. 136. Plaintiffs further confirmed with the IJEC's supervising attorney that the clinic is operational. *See id.* at 1, n.2. The parties submitted a revised stipulation and agreement of settlement, reflecting this change. *See* Dkt. No. 136-1, Ex. 1.

If six months after the initial distribution of funds any funds remain in the Settlement Fund by reason of uncashed checks or otherwise, such funds shall be re-distributed to class members who have cashed their checks and who would receive at least $20 from such re-distribution. *Id.* at Sec. D, ¶ 12. If any funds still remain in the Settlement Fund six months after such re-distribution, then the balance will be contributed to the IJEC. *See id.*

<u>Release</u>: Under the settlement agreement, all class members will release:

> [A]ny and all claims, including Unknown Claims, damages, actions, obligations, attorneys' fees, indemnities, subrogations, duties, demands, controversies, and liabilities of every nature, at law or in equity (including, without limitation, claims under federal and state securities laws, and at common law), suspected or unsuspected, accrued or unaccrued, matured or unmatured, whether arising out of or relating to the period prior to or after the date of the Initial Complaint that any Releasing Persons in their capacity as a shareholder of PG&E (a) asserted in the Initial Complaint, the Complaint, or the Action; or (b) could have been asserted in any forum that arise out of, are based upon, or are related in any way directly or indirectly, in whole or in part, to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Initial Complaint,

---

[2] The Court finds that that there is a sufficient nexus between this alternative *cy pres* recipient and the Settlement Class. The IJEC represents clients in securities cases against securities broker-dealers and provides investor education and outreach programs for underserved investing communities. *See* Dkt. 136 at 2. The Court finds that the IJEC shares the interests of the class members in preventing securities fraud and promoting investor education and protection.

4

> the Complaint, or the Action and that relate to the purchase, acquisition, sale, disposition or holding of PG&E common stock during the Class Period.

*See* Dkt. No. 103 at 1. The Settlement class members further agree to waive:

> [A]ny and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law that is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:
>
>> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

SA at ¶ 52. Following the preliminary approval hearing, the parties filed a stipulation, further clarifying the limits of this release. Dkt. No. 120. The parties' stipulation reads as follows:

> For the avoidance of doubt, claims that "relate to the . . . holding of PG&E common stock during the Class Period" are those in which a Releasing Person purchased PG&E common stock prior to the Class Period but claims, alleges, or otherwise contends that it or they were induced to hold the PG&E common stock due to alleged misrepresentations and/or omissions made during the Class Period. Nothing in the Settlement Agreement, including but not limited to the Release contained therein, releases, dismisses, or in any way impairs any claims arising from the purchase or acquisition of PG&E securities before the Settlement Class Period based on alleged misrepresentations and/or omissions made before the alleged Settlement Class Period.

*Id.* at 3. As this stipulation makes clear, and the parties confirmed during the final fairness hearing, this clarification does not broaden the scope of the release. It is not intended to change the release, but if it has any effect, it is only to narrow the scope of the release to class members' benefit.

Class Notice: A third-party settlement administrator will mail class notices within fourteen days of the Court's order granting preliminary approval to all class members who can be identified with reasonable effort by the Claims Administrator, advising them of the Settlement and of the availability of documentation on the settlement website. *See* Dkt. No. 88-1, Ex. 1 ("Schachter

Decl.") at ¶¶ 5–6; *see also* Dkt. No. 88-1 at 19. The settlement administrator will also publish a summary notice via a newswire with national distribution, within 21 days of the Court's order granting preliminary approval. *See* Schachter Decl. at ¶¶ 8–9; *see also* Dkt. No. 88-1 at 19. And finally, the settlement administrator will post the key case and settlement materials on the following website: www.pgesecuritiessettlement.com. *See* Schachter Decl. at ¶ 7, 11.

Incentive Award: The named Plaintiffs may apply for an incentive award of no more than $5,000. *See* Dkt. No. 88-1 at 16.

Attorneys' Fees and Costs: Class Counsel will file an application for attorneys' fees not to exceed 25% of the gross settlement fund, or $2.5 million, as well as costs not to exceed $100,000. SA at Sec. H, ¶¶ 1–5.

## II.   ANALYSIS

### A.   Final Settlement Approval

#### i.   Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on April 20, 2021, this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No. 107 at 6–11.

#### ii.   The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or

overreaching by, or collusion between, the negotiating parties . . . ."). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the following factors:  (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see also Hanlon*, 150 F.3d at 1026.  "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025.  As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B).  Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See* Dkt. No. 107 at 17–19; *see also* Dkt. No. 117-1, Ex. 1 ("Nordskog Decl.") at ¶¶ 2–7. As of July 2021, A.B. Data had mailed a total of 218,504 Postcard Notices. *See* Nordskog Decl. at ¶ 7.  It also re-mailed 230 notices that were initially returned by

7

the U.S. Postal Service and for whom updated addresses were obtained. *Id.*

In advance of the final fairness hearing, the Court received letters from five putative class members, indicating that they had received notice with little to no time to submit their claim forms and asking that their claim forms be accepted. *See, e.g.*, Dkt. Nos. 123, 124. And in a supplemental declaration, A.B. Data explained that the timing of its mailings varied based on when it received information from nominees. *See* Dkt. No. 125-3 ("Suppl. Nordskog Decl.") at ¶¶ 3–5. A.B. Data explained that several nominees submitted untimely requests to have the Postcard Notice mailed to their lists of potential class members. *Id.* at ¶ 3. For example, Charles Schwab did not request that any notice be sent to its customers until June 29, 2021, when Charles Schwab provided 21,427 names and addresses. *See id.* at ¶ 15. A.B. Data sent notice to these potential class members on July 9, 2021. *Id.* On July 9, 2021, Axos Clearing LLC requested that A.B. Data mail notice to 110 of its clients. *See id.* at ¶ 4. And on July 21, 2021, Broadridge Financial Solutions, Inc. and Pacific Premier Trust requested that A.B. Data mail notice to over 7,700 of their clients. *Id.* Accordingly, since its initial declaration in July, A.B. Data mailed an additional 7,826 Postcard Notices. *Id.* at ¶ 3.

As a result of this staggered mailing, Plaintiffs appear to acknowledge that "many Settlement Class Members received notice just before or even after the July 19, 2021 claims filing deadline." *See* Dkt. No. 125 at 4. However, class members who received late notice were nevertheless informed by letter included with the mailed notice that those who "wish[ed] to be eligible to participate in the Settlement" should "submit a valid Claim Form" and that "A.B. Data, Ltd. is continuing to accept and process claims, which Lead Counsel will submit to the Court, and recommend for approval, provided that they do not materially delay distribution of the Settlement." *See* Suppl. Nordskog Decl. at ¶ 4. During the final fairness hearing, counsel explained that counsel and the claims administrator fielded calls from class members asking if they could still submit claims. And counsel told them to do so, explaining that counsel would ask the Court to approve these claims. Counsel further explained to these prospective class members that counsel believed their claims would be accepted. As the Court stated during the final fairness hearing, all valid claim forms will be accepted, even those received after the stated deadline.

8

1       As of September 2, A.B. Data received 24,083 claims, or approximately 11% of the number of mailed notices. *See id.* at ¶ 9. During the final fairness hearing, the parties explained that this figure is above the 10% yield expected in securities cases in their experience. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### 1. Strength of Plaintiffs' Case and Litigation Risk

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotations omitted).

The Court finds that the amount offered in settlement is reasonable in light of the complexity of this litigation and the substantial risk that Plaintiffs would face in litigating the case given the nature of the asserted claims. *See* Dkt. No. 116 at 12–14. Were the case to proceed, Plaintiffs have acknowledged they would face difficulties establishing scienter, which would require complex discussions of PG&E's evolving wildfire prevention efforts. *See id.* at 13–14. Additionally, Plaintiffs acknowledge they would face risks proving their "core de-energization theory" since, to their knowledge, the de-energizations appeared to work and no one died as a result of them. *See id.* at 14. Even if Defendants' statements were false, Plaintiffs would also have to prove damages. This would be difficult because PG&E's stock was so volatile at the time.

9

*See id.* at 15–17. Plaintiffs note that "all but 3 of the stock price disclosures identified in the Complaint are not statistically different from an average day" due to this volatility. *Id.* at 16. In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### 2. Risk of Maintaining Class Action Status

In considering this factor, the Court looks to the risk of maintaining class certification if the litigation were to proceed. The parties acknowledge that the exact class size cannot be definitively ascertained because the vast majority of class members hold their securities through a broker, bank, or other financial institution, and billions of shares of PG&E common stock were traded during the class period. *See* Dkt. No. 88-1 at 21. However, they sent over 200,000 notices to potential class members. Nevertheless, the parties appear to recognize that given the facts of this case and current case law, "the risk of not being able to proceed on a classwide basis is minimal." *See* Dkt. No. 116 at 18. Accordingly, this factor does not weigh heavily in favor of approval.

### 3. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement amount falls "within the range of reasonableness" in light of the risks and costs of litigation. *See* Dkt. No. 52 at 13–15; Dkt. No. 36-1 at ¶ 55; *see also Villanueva v. Morpho Detection, Inc.*, No. 13-cv-05390-HSG, 2016 WL 1070523 *4 (N.D. Cal. March 18, 2016) (citing cases). Plaintiffs' expert estimated that damages from the alleged false de-energization statements amounted to $468 million. *See* Dkt. No. 116 at 19. The $10 million settlement here therefore recovers slightly more than 2% of those estimated damages. *Id.* This 2% aggregate recovery is consistent with the 2–3% average recovery that the parties identified in other securities class action settlements. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th

Cir. 2020); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *8–9 (C.D. Cal. June 10, 2005).[3]

Although the claims administrator has not concluded the claim verification process, counsel estimated during the final fairness hearing that the average recovery for class members would be approximately $4,000, with a median recovery of approximately $51. Counsel further indicated that it anticipated a recovery of approximately 3 cents per share. To the extent the claims verification process removes any fraudulent claims, these estimates would only increase. In any event, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982). The Court finds under the circumstances that this factor weighs in favor of approval.

### 4. Extent of Discovery Completed and Stage of Proceedings

The Court finds that Class Counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The parties settled only after they had informally exchanged significant information relevant to Plaintiffs' claims. *See* Dkt. No. 116 at 12. Thus, the Court is persuaded that Class Counsel entered the settlement discussions with a substantial understanding of the factual and legal issues, so as to allow them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 5. Experience and Views of Counsel

The Court next considers the experience and views of counsel. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotations omitted). Class Counsel has substantial experience in similar class actions. *See* Dkt. No. 116 at 11. The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions.

---

[3] *See also* Cornerstone Research, Securities Class Action Settlements, 2016 Review and Analysis, at 7 (2017), *available at* http://securities.stanford.edu/research-reports/1996-2016/Settlements-Through-12-2016-Review.pdf (detailing median securities class action settlements from 2007–2016).

11

1  *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010)
2  ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852
3  ("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's
4  impact is therefore modest, but favors approval.

### 6. Reaction of Class Members

The reaction of the Class Members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

As of September 2, A.B. Data had only received three purported requests for exclusion. *See* Suppl. Nordskog Decl. at ¶ 10. In one of them, however, the individual indicated that she did not purchase PG&E shares during the class period and therefore is not a class member. *Id.* As of September 2, A.B. Data also had not received any objections.[4] The Court finds that the minimal number of objections and opt-outs in comparison to the size of the class indicates overwhelming support among the Class Members and weighs in favor of approval of the settlement. *See*, *e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected); *Rodriguez v. West Publ. Corp.*, Case No. CV05–3222 R, 2007 WL 2827379, at *10 (C.D. Cal. Sept. 10, 2007) (finding favorable class reaction where 54 of 376,301 class members objected).

\* \* \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement Class Members received

---

[4] The Court notes that it received a letter from Michael Jesse on July 14, 2021, raising concerns about the Postcard Notice. *See* Dkt. No. 121. However, the Court does not construe this letter as an objection. Mr. Jesse appears to have had concerns about the mechanics of the notice, requesting more information in larger font. *See id.* A.B. Data responded to Mr. Jesse, contacting him by phone and shipping him copies of the long form notice and claim form in larger font. *See* Suppl. Nordskog Decl. at ¶ 12.

adequate notice. Accordingly, Plaintiffs' motion for final approval of the class action settlement is **GRANTED**.

### B. Attorneys' Fees, Costs and Expenses, and Incentive Award

In its unopposed motion, Class Counsel asks the Court to approve an award of $2.5 million in attorneys' fees and $82,046.46 in costs. Dkt. No. 118. Class Counsel also seeks a $5,000 incentive award for each of the three Named Plaintiffs. *Id.* at 14–15.

#### i. Attorneys' Fees & Costs

##### a. Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). In a state law action—like this one—state law also governs the calculation of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees. *See Apple Computer, Inc. v. Superior Court*, 126 Cal. App. 4th 1253, 1264 n.4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures.").

Under California law, the "percentage of fund method" is proper in class actions. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage fee." *Id.* The "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003). Trial courts "also retain the discretion to forgo a lodestar cross-check and use other means to evaluate the reasonableness of a requested percentage fee." *Laffitte*, 1 Cal. 5th at 506. Class Counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotations omitted).

##### b. Discussion

Class Counsel here seeks over $2.5 million in attorneys' fees and costs. *See* Dkt. No. 118.

As of the filing of the motion for attorneys' fees, Class Counsel had incurred $914,472.90 in fees and $82,046.46 in costs. Following the final fairness hearing and at the Court's request, counsel submitted itemized billing records for both Pomerantz and The Rosen Law Firm for in camera review. These records reflect that as of September 24, 2021, counsel spent a total of 1,278.58 hours on this case and incurred $984,179 in fees. Class Counsel urges that the full $2.5 million is appropriate under the "percentage of fund" method. *See* Dkt. No. 118.

Using federal law for guidance, 25% of the common fund is the benchmark for attorney fee awards. *See*, *e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."). The Court considers the reasonableness of the percentage requested in light of the factors enumerated by the Ninth Circuit, with the 25% award as a starting point. That court has identified several factors that a court should consider to determine whether to adjust a fee award from the benchmark: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50.

The first and "most critical factor [in determining an attorneys' fee] is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). As previously discussed, the $10 million common fund represents a 2% recovery on the estimated $468 million in losses that Plaintiffs' expert estimated resulted from the de-energization statements. *See* Dkt. No. 116 at 19. This also appears consistent with the 2–3% average recovery that the parties identified in other securities class action settlements. Moreover, as noted above, no class member objected to the adequacy of the settlement amount. The Court agrees that this represents an excellent result for class members.

This recovery must also be considered in light of the significant risks that Plaintiffs would face by further litigating this case. The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees. *See Vizcaino*, 290 F.3d at 1048. As Plaintiffs explained in their motion for

14

final approval, they would face considerable difficulty obtaining a similar recovery through further litigation given the complexity of this case and the variability of PG&E's stock price over the class period. *See* Dkt. No. 116 at 12–17. As Class Counsel acknowledged, "[b]etween the myriad developments in its bankruptcy, comments and actions from its regulators and public officials, developments in its criminal proceedings, and developments in fires set by its equipment, 2020 was the most eventful year of PG&E's history." *See id.* at 16. This factor therefore also weighs in favor of their requested award.

Counsel also litigated this case skillfully and professionally. Having reviewed counsel's billing records, the Court further finds that counsel appears to have litigated this action diligently and efficiently. In addition, the risk co-lead counsel took in litigating this case on a contingency basis for the last two years weighs in favor of a substantial attorneys' fee award. *See Vizcaino*, 290 F.3d at 1050. Courts have found that the importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or as a flat fee. *See id.* And here, counsel spent significant time on this case without any certainty that they would be compensated. These factors weigh in favor of the award.

As a final check on the reasonableness of the requested fees, the Court compares the requested fees with counsel's bills under the lodestar analysis. *See, e.g.*, *Vizcaino*, 290 F.3d at 1050–51 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The Court must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434. However, as noted above, the Court reviewed detailed billing records and found counsel's time reasonable given the demands of this case. Plaintiffs' counsel spent a total of 1,278.58 hours on this case, which at their hourly rates, results in a total lodestar of approximately $984,179. This represents a multiplier of approximately 2.5 times the lodestar. In similar cases, courts have approved multipliers ranging between 1 and 4. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the 1.0 to 4.0 range and 54% in the 1.5 to 3.0 range). Because Class Counsel's lodestar multiplier is within the range of

15

reasonableness, it also supports the requested award.

An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund. *See Harris*, 24 F.3d 16 at 19 (quotations omitted). Class Counsel is thus entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Id.* The Court finds that counsel's requested expenses are reasonable and grants the request.

*      *      *

The Court accordingly awards 25% of the $10 million Settlement Amount, or $2.5 million to Class Counsel in attorneys' fees and $82,046.46 in costs, for a total of $2,582,046.46.

### ii. Incentive Awards

Lastly, Class Counsel requests an incentive award of $5,000 for each of the Named Plaintiffs. *See* Dkt. No. 118 at 14. District courts have discretion to award incentive fees to named class representatives. *See In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). "Service awards as high as $5,000 are presumptively reasonable in this judicial district." *See Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1531171, at *12 (N.D. Cal. Apr. 19, 2021). However, the Court shares the Ninth Circuit's concern that "if class representatives expect routinely to receive special awards in addition to their share of the recovery, they may be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard." *See Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003); *Radcliffe v. Experian Information Sols. Inc.*, 715 F.3d 1157, 1163–64 (9th Cir. 2013) (noting that the Ninth Circuit has "expressed disapproval of these incentive agreements" and that "in some cases incentive awards may be proper but . . . awarding them should not become routine practice"). The Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe*, 715 F.3d at 1165 (quotations omitted). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.*

Class Counsel represents that the named Plaintiffs closely participated in every aspect of this case and kept apprised of developments in the case and regarding PG&E. *See, e.g.*, Dkt. No.

118 at 14. Mr. Allustiarti, for example, explains that he spent significant time reviewing documents in this case, working with counsel, and staying apprised of case and company developments. *See* Dkt. No. 117-4; *see also* Dkt. Nos. 125-2, 125-4. The Court concludes that given the circumstances of this case and the quality of the settlement achieved, the requested incentive awards are justified and reasonable to compensate Plaintiffs for their efforts.

## III. CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement and **GRANTS** the motion for attorneys' fees and incentive award. The Court awards attorneys' fees in the amount of $2.5 million and costs in the amount of $82,046.46.

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are further directed to file a short stipulated final judgment of two pages or less within 21 days from the date of this order. The judgment need not, and should not, repeat the analysis in this order.

**IT IS SO ORDERED.**

Dated: 11/5/2021

HAYWOOD S. GILLIAM, JR.
United States District Judge